THE HONORABLE JAMAL N. WHITEHEAD

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

DAVID GOGGINS, GOGGINS BUILT NOT
BORN, LLC, and GOGGINS, LLC,

Plaintiffs,

v.

AMAZON.COM, INC. and AMAZON.COM
SERVICES, LLC,,

Defendants.

Case No. 2:24-cv-00257-JNW

**DECLARATION OF JESSICA STEBBINS BINA IN SUPPORT OF DEFENDANTS AMAZON.COM, INC.'S AND AMAZON.COM SERVICES, LLC'S SECOND MOTION TO COMPEL ARBITRATION AND STAY**

*[Motion to Compel Arbitration; Motion to Dismiss; and Motion to Stay Discovery filed concurrently herewith]*

**NOTE ON MOTION CALENDAR: July 26, 2024**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF JESSICA STEBBINS BINA
IN SUPPORT OF DEFENDANTS' SECOND MOTION TO
COMPEL ARBITRATION AND STAY
Case No. 2:24-cv-00257-JNW

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

I, Jessica Stebbins Bina, declare as follows:

1.      I am an attorney licensed to practice law in the State of California.  I am a partner with the law firm of Latham & Watkins LLP, counsel of record for defendants Amazon.com, Inc. and Amazon.com Services, LLC ("Amazon").  I respectfully submit this declaration in connection with Amazon's second motion to compel arbitration and stay the action pending completion of arbitration.  I have personal knowledge of the facts contained in this declaration.  If called upon to do so, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Jonathan Bangs filed on April 11, 2024 (ECF 24) in support of defendant Amazon.com, Inc's original motion to compel arbitration and stay the action.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the American Arbitration Association's ("AAA") Consumer Arbitration Rules, which are accessible at the AAA's website at https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the AAA's Commercial Arbitration Rules, which are accessible at the AAA's website at https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of June, 2024.

/s/ Jessica Stebbins Bina
Jessica Stebbins Bina

DECLARATION OF JESSICA STEBBINS BINA
IN SUPPORT OF DEFENDANTS' SECOND MOTION TO
COMPEL ARBITRATION AND STAY - 1
Case No. 2:24-cv-00257-JNW

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# EXHIBIT 1

THE HONORABLE JAMAL N. WHITEHEAD

1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9   DAVID GOGGINS, GOGGINS BUILT NOT        Case No. 2:24-cv-00257-JNW
    BORN, LLC, and GOGGINS, LLC,
10                                          **DECLARATION OF JONATHAN**
                        Plaintiffs,         **BANGS IN SUPPORT OF DEFENDANT**
11                                          **AMAZON.COM, INC.'S MOTION TO**
            v.                              **COMPEL ARBITRATION AND STAY**
12
    AMAZON.COM, INC.,                       *[Defendant's Motion to Compel Arbitration*
13                                          *and Stay; Defendant's Motion to Dismiss;*
                        Defendant.          *and Declaration of Jessica Stebbins Bina*
14                                          *filed concurrently herewith]*
15
                                            **NOTE ON MOTION CALENDAR:**
16                                          **May 3, 2024**
17
18
19
20
21
22
23
24
25
26

DECLARATION OF JONATHAN BANGS IN SUPPORT OF          **MORGAN, LEWIS & BOCKIUS LLP**
DEFENDANT AMAZON.COM, INC.'S MOTION TO                        ATTORNEYS AT LAW
COMPEL ARBITRATION AND STAY - 1                     1301 SECOND AVENUE, SUITE 3000
Case No. 2:24-cv-00257-JNW                            SEATTLE, WASHINGTON 98101
                                              TEL +1.206.274.6400   FAX +1.206.274.6401

DocuSign Envelope ID: 07734694-3F9C-4A33-B5EE-57F866070791

I, Jonathan Bangs, declare as follows:

1.　　I am a Director of Books Operations at Amazon.  I respectfully submit this declaration in connection with Amazon's motion to compel arbitration and stay.  I have personal knowledge of the facts contained in this declaration.  If called upon to do so, I could and would testify competently thereto.

2.　　As a Director of Books Operations at Amazon, I support content acquisition and operations within the Books organization.  The Books organization includes Kindle Direct Publishing, Advantage, and other book-related teams.  Based on my review of Amazon's business records and my job responsibilities, I am familiar with the information discussed in this declaration.  I make this declaration based on personal knowledge and Amazon's records kept in the ordinary course of business.

3.　　The Kindle Direct Publishing program ("KDP") allows authors to self-publish and sell their books through Amazon's website.  As part of the Kindle Direct Publishing account creation process, authors are required to accept the KDP Terms and Conditions in effect at the time they create their account.  The KDP Terms and Conditions are displayed on a page with buttons that give the author the option to either "Agree" to the Terms and Conditions or "Cancel" the account creation process, as shown below.

DECLARATION OF JONATHAN BANGS IN SUPPORT OF
DEFENDANT AMAZON.COM, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY - 2
Case No. 2:24-cv-00257-JNW

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400　FAX +1.206.274.6401

Last Updated: November 8, 2023

This agreement changed on the date listed above.
See an explanation of the changes at the end of this document.

Kindle Direct Publishing Terms and Conditions

This agreement (the "Agreement") is a binding agreement between the individual or the entity identified in your Kindle Direct Publishing ("KDP") account ("you" or "Publisher") and each Amazon party. The "Amazon parties" are, individually, Amazon.com Services LLC, Amazon Media EU S.à.r.l., Amazon Services International LLC, Amazon Serviços de Varejo do Brasil Ltda., Amazon Mexico Services, Inc., Amazon Australia Services, Inc., Amazon Asia-Pacific Holdings Private Limited, and each other Amazon affiliate that joins as a party to this Agreement. An Amazon "affiliate" is any entity that directly or indirectly controls, is controlled by, or is under common control with an Amazon party. "Amazon," "we" or "us" means, together, the Amazon parties and their affiliates.

This Agreement provides the terms and conditions of your participation in the KDP self-publication and distribution program (the "Program") and your distribution of digital content through the Program (all such content, "Digital Books") and your distribution of print content through the Program (all such content, "Print Books" and together with Digital Books, "Books"), and consists of:
• the terms set forth below;
• the Digital Book Pricing Page and the Print Book Pricing Page;
• all rules and policies for participating in the Program provided on the KDP website at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/ ("Program Policies");
• the Amazon.com Conditions of Use; and
• the Amazon.com Privacy Notice.

For individuals located in the European Union, the United Kingdom, Brazil, or Australia only: The Amazon.com Privacy Notice is not part of

View printer friendly version

[Agree] [Cancel]

4.      An author cannot proceed with the account creation process unless they click on the "Agree" button.  Amazon automatically records the date and time that an author accepts the Terms and Conditions and the version they accepted.

5.      David Goggins ("Goggins") created a Kindle Direct Publishing account on August 29, 2018.  As part of the process of creating his account, Goggins was required to accept the Kindle Direct Publishing Terms and Conditions in effect on that date by clicking on the "Accept" button as described above.  Amazon's records reflect that during account creation, Goggins accepted the Kindle Direct Publishing Terms and Conditions that were last updated on August 27, 2018 (the "Original KDP Terms").  A true and correct copy of the Original KDP Terms and Conditions is attached hereto as **Exhibit 1**.

6.      The Original KDP Terms and Conditions provided, in Paragraphs 2 and 2.1, that Amazon may update them from time to time, and further provided that continued use of the Program constitutes acceptance of the changes.   Amazon notifies authors of updates to the Terms and Conditions for Kindle Direct Publishing by posting the updated version to the KDP website,

DECLARATION OF JONATHAN BANGS IN SUPPORT OF
DEFENDANT AMAZON.COM, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY - 3
Case No. 2:24-cv-00257-JNW

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

DocuSign Envelope ID: 07734694-3F9C-4A33-B5EE-57F86970791

1 http://kdp.amazon.com.  The Terms and Conditions were most recently updated on November 8,

2 2023 (the "Current KDP Terms").  A true and correct copy of the Current KDP Terms is attached

3 hereto as **Exhibit 2**.  A link to these terms was posted on *kdp.amazon.com* on November 8, 2023,

4 with a header noting that they were "Last Updated: November 8, 2023."

5          7.          KDP authors can make updates to their books and republish them at any time.  Each

6 time a KDP author republishes a book, they must to accept the Kindle Direct Publishing Terms

7 and Conditions in effect on that date by clicking on the "Publish Your Kindle eBook" button, as

8 shown below.  Goggins accepted the Kindle Direct Publishing Terms and Conditions more than

9 50 times between April 27, 2020 and March 28, 2024 by updating and republishing books through

10 the KDP program.

11

12

13

14

| Terms & Conditions | It can take up to 72 hours for your title to be available for purchase on Amazon. |
|---|---|
| | By clicking Publish below, I confirm that I agree to and am in compliance with the **KDP Terms and Conditions** and that I have all rights necessary to make the content I am uploading available for marketing, distribution and sale in each territory I have indicated above. |

| < Back to Content | Save as Draft | Publish Your Kindle eBook |

15          8.          Goggins has continued to sell paperback and Kindle editions of two books, *Can't*

16 *Hurt Me* and *Never Finished*, through the Kindle Direct Publishing program, after the KDP Terms

17 and Conditions were updated on November 8, 2023, and has not at any point discontinued his use

18 of the Kindle Direct Publishing program.

19          9.          The Amazon Advantage ("Advantage") program is a retail consignment program

20 that allows vendors to ship their products to Amazon's fulfillment centers and have Amazon

21 manage sales, delivery, customer service, and refunds.  Vendors are required to enroll in the

22 Advantage program.  In 2018, the onboarding process was as follows:  First, the vendor entered

23 their name and email address on the Advantage website.  Next, the vendor received a welcome

24 email containing a link to complete a registration process.  Then, the vendor clicked the link and

25 returned to the Advantage website registration page, where the vendor reviewed the (1) The

26

DECLARATION OF JONATHAN BANGS IN SUPPORT OF
DEFENDANT AMAZON.COM, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY - 4
Case No. 2:24-cv-00257-JNW

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Advantage Membership Agreement; and (2) The Advantage Instructions and Rules. Finally, as shown below, the vendor must have selected "Accept all agreements" on this page.



10. Goggins applied to join the Advantage program on September 1, 2018, and accepted the Advantage Membership Agreement in effect at that time as part of the account creation process.[1] At a later time Goggins updated his account to change the name to his business name, Goggins Built Not Born, LLC. At the time Goggins accepted the Advantage Membership Agreement, it had last been updated on October 1, 2017 (the "Original Advantage Agreement"). A true and correct copy of the Original Advantage Agreement is attached hereto as **Exhibit 3**.

11. Like the Original KDP Terms and Conditions, the Original Advantage Agreement provided, in Paragraph 17, that Amazon may update the agreement from time to time, and further provided that continued membership in Advantage constitutes acceptance of the changes. Amazon notifies vendors of updates to the Advantage Membership Agreement by displaying a "News" item at the top of the Advantage vendor homepage, as shown in the example below.

---

[1] Goggins also joined the UK and Canadian Amazon Advantage Programs. All references in this Declaration are to the U.S. Amazon Advantage Program and related agreements thereto.

DECLARATION OF JONATHAN BANGS IN SUPPORT OF
DEFENDANT AMAZON.COM, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY - 5
Case No. 2:24-cv-00257-JNW

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

12.     The Advantage Membership Agreement was most recently updated on November 14, 2022 (the "Current Advantage Agreement").  Attached hereto as **Exhibit 4** is a true and correct copy of the Current Advantage Agreement.

13.     Amazon notified GBNB of the Current Membership Agreement by displaying a "News" item at the Advantage website for one month after the Membership Agreement was updated, from November 14, 2022 to December 14, 2022.[2]  The News item—stating that Amazon was "Updating Advantage Membership agreement, instructions, and rules" and that it had "changed the dispute resolution mechanism to arbitration"—was displayed at the top of the Advantage vendor homepage, with a link to "Read More," which allowed vendors to access the Current Advantage Agreement.  A true and correct copy of the text of the November 14, 2022, News item is attached hereto as **Exhibit 5**.  The Current Membership Agreement was also posted to the Advantage Resource Center, as shown below, and the News item included a link that vendors could use to access this Resource Center.

---

[2] The updates were displayed starting November 14, 2022, but with a notice that they would be enforced starting December 14, 2022.

DECLARATION OF JONATHAN BANGS IN SUPPORT OF
DEFENDANT AMAZON.COM, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY - 6
Case No. 2:24-cv-00257-JNW

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

14.     When a vendor accesses their account to access the Advantage website, Amazon automatically records the date, time, and page that the vendor accessed.  Between November 14, 2022, to December 14, 2022, GBNB's account accessed the Advantage vendor website homepage, where the News item regarding the updated Advantage Membership Agreement was displayed, 138 times.

15.     GBNB continued to sell hardcover editions of his books, *Can't Hurt Me* and *Never Finished*, through the Advantage program after the Current Advantage Agreement became effective, and did not at any point discontinue his membership in the Advantage program.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of April, 2024.

DocuSigned by:

Jon Bangs

Jonathan Bangs

US-DOCS\149990896
 071270-0237

DECLARATION OF JONATHAN BANGS IN SUPPORT OF
DEFENDANT AMAZON.COM, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY - 7
Case No. 2:24-cv-00257-JNW

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# EXHIBIT 1

Last Updated:  August 27, 2018

This agreement changed on the date listed above.

See an explanation of the changes at the end of this document.

**Kindle Direct Publishing Terms and Conditions**

This agreement (the "Agreement") is a binding agreement between the individual or the entity identified in your Kindle Direct Publishing ("KDP") account ("you" or "Publisher") and each Amazon party. The "Amazon parties" are, individually, Amazon Digital Services LLC, Amazon Media EU S.à.r.l., Amazon Services International, Inc., Amazon Serviços de Varejo do Brasil Ltda., Amazon Mexico Services, Inc., Amazon Australia Services, Inc., Amazon Asia-Pacific Holdings Private Limited, and each other Amazon affiliate that joins as a party to this Agreement. An Amazon "affiliate" is any entity that directly or indirectly controls, is controlled by, or is under common control with an Amazon party. "Amazon," "we" or "us" means, together, the Amazon parties and their affiliates.

This Agreement provides the terms and conditions of your participation in the KDP self-publication and distribution program (the "Program") and your distribution of digital content through the Program (all such content, "Digital Books") and your distribution of print content through the Program (all content, "Print Books" and together with Digital Books, "Books"), and consists of:
• the terms set forth below;
• the Digital Pricing Page and the Print Pricing Page;
• all rules and policies for participating in the Program provided on the KDP website at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/ ("Program Policies");
• the Amazon.com Conditions of Use; and
• the Amazon.com Privacy Notice.

For individuals located in the European Union only: The Amazon.com Privacy Notice is not part of your Agreement. The version of this notice applicable to you is based on your location and is available for your review here.
Any version of this Agreement in a language other than English is provided for convenience and the English language version will control if there is any conflict. Given the importance of this Agreement, we encourage you to study it carefully. We welcome feedback on this Agreement at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/.

1 Agreement Acceptance. You accept this Agreement and agree to be bound by its terms by either (a) clicking agree or accept where you're given the option to do so or (b) by using the Program, or any part of it. If you don't accept the terms, you are not entitled to use the Program. If the Publisher is an entity, the individual person who accepts this Agreement for the Publisher represents and warrants that he or she is entitled to enter this Agreement as an authorized representative of Publisher and to bind Publisher to the terms of this Agreement.

2 Agreement Amendment. The Program will change over time and the terms of this Agreement will need to change over time as well. We reserve the right to change the terms of this Agreement at any time in our sole discretion. We will give you notice of the changes by posting new terms in place of the old at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/ with a revision date indicated at the top or by sending an email to the email address then registered for your Program account. Here are the rules for when changes will be effective and binding on you:

2.1 Changes to Agreement Terms Other than Those in Sections 5.4.1 (Royalties) and 5.5 (Grant of Rights). Changes to terms of this Agreement other than those contained in Section 5.4.1 (Royalties) and 5.5 (Grant of Rights) will be effective on the date we post them, unless we otherwise provide at the time we post the changes. You are responsible for checking for updates and your continued use of the Program after we post changes will constitute your acceptance of the changes. If you do not agree to the changes, you must withdraw your Books from further distribution through the Program and terminate your use of the Program.

2.2 Changes to the Terms of Sections 5.4.1 (Royalties) and 5.5 (Grant of Rights). Changes to terms of this Agreement contained in Sections 5.4.1 (Royalties) and 5.5 (Grant of Rights) will be effective and binding on you on the date 30 days from posting or on the date you accept the changes, whichever first occurs. You accept the changes by either (a) clicking agree or accept where you're given the option to do so or (b) by using the Program to make additional Books available through the Program. Changes to the terms of Sections 5.4.1 and 5.5 will only apply prospectively with respect to Books sold after the date thirty days from our posting of the changes, unless you accept the changes as provided above. If you do not accept the changes, you must withdraw your Books from further distribution through the Program and terminate your use of the Program prior to the date thirty days from our posting of the changes. Note that we may make acceptance of changes a condition to continued use of the Program.

3 Term and Termination

The term of this Agreement will begin upon your acceptance of it and will continue until it is terminated by us or by you. We are entitled to terminate this Agreement and your access to your Program account at any time. We will notify you upon termination. You are entitled to terminate at any time by providing us notice of termination, in which event we will cease selling your Digital Books and on-demand printings of your Print Books within 5 business days from the date you provide us notice of termination.  We may continue to sell any inventory we have of your Print Books. We may also suspend your Program account at any time with or without notice to you, for any reason in our discretion. Following termination or suspension, we may fulfill any customer orders for your Books pending as of the date of termination or suspension, and we may continue to maintain digital copies of your Digital Books in order to provide continuing access to or re-downloads of your Digital Books, as well as digital copies of your Books to support customers who have purchased a Book prior to termination or suspension. The following provisions of this Agreement will survive termination of this Agreement: Sections 1, 3, 5.4, 5.5, 5.6, 5.7, 5.8, 6, 7, 8, 9, 10, and any other provisions that, by their nature, are intended to survive. All rights to Digital Books acquired by customers will survive termination.

4 Account Eligibility and Registration

4.1 Eligibility. You must have an active Program account in order to participate in the Program. You represent that you are at least 18 years old (or the age of majority where you reside, whichever is older) and that you are able to form a legally binding contract. A parent or guardian of a minor can open a KDP account and be the Publisher of the minor's Book.

4.2 Account Information; No Multiple Accounts. You must ensure that all information you provide in connection with establishing your Program account, such as your name, address and email, is accurate when you provided it, and you must keep it up to date as long as you use the Program. You may maintain only one account at a time. If we terminate your account, you will not establish a new account. You will not use false identities or impersonate any other person or use a username or password you are not authorized to use. You authorize us, directly or through third parties, to make any inquiries we consider appropriate to verify account information you provide. You also consent to us sending you emails relating to the Program and other publishing opportunities from time to time.

4.3 Account Security. You are solely responsible for safeguarding and maintaining the confidentiality of your account username and password and are responsible for all activities that occur under your account, whether or not you have authorized the activities. You may not permit any third party to use the Program through your account and will not use the account of any third party. You agree to immediately notify Amazon of any unauthorized use of your username, password or account.

5 Book Distribution Rights.

5.1 Delivery, Acceptance and Withdrawal.

5.1.1 Delivery. You must provide to us, at your own expense each Book you desire to distribute through the Program. We will not return to you any electronic files or physical content or media you deliver to us in connection with the Program. You must deliver all electronic files free and clear of viruses, worms and other potentially harmful or disrupting code.

5.1.2 Content Requirements. You must ensure that all Book content is in compliance with our Program Policies for content at the time you submit it to us. If you discover that content you have submitted does not comply, you must immediately withdraw the content by un-publishing it or by re-publishing content that complies through the Program procedures for Book withdrawal or re-publishing. We are entitled to remove or modify the metadata and product description you provide for your Books for any reason, including if we determine that it does not comply with our content requirements. We may also remove all or any part of your Book's cover art for any reason, including if we determine that it does not comply with our content requirements. You may not include in any Book any advertisements or other content that is primarily intended to advertise or promote products or services. You must ensure that all metadata you provide to us is current, complete, and accurate. If you discover that any metadata you have provided to us for a Book is inaccurate or incomplete, you must promptly submit corrected metadata to us through the Program procedures for metadata submission.

5.1.3 Book Rejection. We are entitled to determine what content we accept and distribute through the

Program in our sole discretion. If we request that you provide additional information relating to your Books, such as information confirming that you have all rights required to permit our distribution of the Books, you will promptly provide the information requested, and you represent and warrant that any information and documentation you provide to us in response to such a request will be current, complete, and accurate. You authorize us, directly or through third parties, to make any inquiries we consider appropriate to verify your rights to permit our distribution of the Books and the accuracy of the information or documentation you provide to us with respect to those rights.

5.1.4 Book Withdrawal. You may withdraw your Digital Books from further sale and your Print Books from further on-demand printing in the Program at any time on five business days advance notice by following the then current Program procedures for Book withdrawal or un-publishing. We may fulfill any customer orders completed through the date the Books are available for sale and we may continue to sell any inventory we have of Print Books. All withdrawals of Books will apply prospectively only and not with respect to any customers who purchased the Books prior to the date of removal.

5.1.5 Reformatting. We may, in our discretion, reformat your Books, and you acknowledge that unintentional errors may occur in the process of reformatting of your Books. If any such errors do occur, you may remove the affected Book from further sale in the Program as provided in Section 5.1.4 above, and this will be your only remedy for the errors. We may also, in our discretion, correct any errors existing in a Book file as you deliver it to us.

5.2 Marketing and Promotion, Reviews, Lending Kindle Books and Optional Programs and Services.

5.2.1 Marketing and Promotion. We will have sole discretion in determining all marketing and promotions related to the sale of your Books through the Program and may, without limitation, market and promote your Books by making chapters or portions of your Books available to prospective customers without charge, and by permitting prospective customers to see excerpts of your Books in response to search queries. We will not owe you any fees for any marketing or promotional efforts. You acknowledge that we have no obligation to market, distribute, or offer for sale any Book, or to continuing marketing, distributing or selling a Book after we have commenced doing so.

5.2.2 Reviews.  You are subject to the same guidelines as any other customer contributing a review to an Amazon website.  We reserve the right to remove any review that violates the Amazon Community guidelines.

5.2.3 Lending Kindle Books. The Kindle Book Lending program enables customers who purchase a Digital Book to lend it subject to limitations we establish from time to time. All Digital Books made available through the Program are automatically included in the Kindle Book Lending program. However, for Digital Books that are in the 35% Royalty Option (as described in the Digital Pricing Page), you may choose to opt out of the Kindle Book Lending program. This will disable lending of the Digital Book by customers who purchase it after you have opted it out, but this will not affect the right of customers who purchased it when lending was enabled to continue to lend it. You may not choose to opt out a Digital Book if it is included in the lending program of another sales or distribution channel. If we become aware that a Digital Book you have opted out is included in the lending program of another sales or distribution channel, we may enable it for lending. Digital Books that are in the 70% Royalty

Option (as described in the Digital Pricing Page) cannot be opted out of the lending feature.

5.2.4 Optional Programs and Services. We may make available to you optional programs and services through KDP. Terms and conditions for those optional programs and services are included at the end of this Agreement. Those terms and conditions are part of this Agreement.

5.3 Pricing.

5.3.1 Providing Your List Price. The list price you provide to us is referred to in this Agreement as your "List Price." For some marketplaces, you will provide us a List Price inclusive of value added or similar taxes that are included within the customer purchase price of a product ("VAT").  Where your Royalty is calculated based on your List Price, it will be calculated based on your List Price exclusive of the VAT applicable to the customer.  You may change your List Price through the KDP website, and your change will be effective within 5 business days. The Digital Pricing Page and the Print Pricing Page have additional requirements for List Prices that you must comply with. The List Price for purposes of the Royalty calculation will be the List Price we determine to be effective at the time of customer purchase.

5.3.2 Currency Conversion. We may sell your Book using multiple currencies. When we do, we may convert the List Price you submit to other currencies (each, a "Sale Currency") at an exchange rate we determine. We may periodically update the converted List Price in order to reflect current exchange rates. If the converted List Price would be outside of the minimum or maximum List Price we accept for the Sale Currency, your List Price will be converted so that it is equal to the applicable minimum or maximum List Price for that Sale Currency. Minimum and maximum List Prices are specified here. For purposes of royalty calculations, the converted List Price in the Sale Currency will be your List Price when we offer and sell your Book in the Sale Currency.

5.3.3 Multiple List Prices. We may give you the option to provide multiple List Prices for a Book in different currencies or for different Amazon websites. If you provide multiple List Prices for a Book, where we sell your Book to customers in a particular country from more than one Amazon website, we may use one of those List Prices for sales to customers in that country on all of our websites, to provide consistency across those websites. For example, if you provide us with a UK Pounds List Price and a US Dollar List Price for a Book, we may use the UK Pounds List Price for sales to UK customers from all of our websites, including Amazon.com, and we may convert it as provided in 5.3.2 above.

5.3.4 Customer Prices. To the extent not prohibited by applicable laws, we have sole and complete discretion to set the retail customer price at which your Books are sold through the Program. We are solely responsible for processing payments, payment collection, requests for refunds and related customer service, and will have sole ownership and control of all data obtained from customers and prospective customers in connection with the Program.

5.4 Royalties and Payments.

5.4.1 Royalties. If you are not in breach of your obligations under this Agreement, for each Book sold to a customer through the Program, the Amazon party that made the sale (or whose affiliate made the

sale) will pay you the applicable Royalty set forth in the Digital Pricing Page or Print Pricing Page, as applicable, net of refunds, bad debt, and any VAT, sales or other taxes charged to a customer or applied with respect to sales to a customer. If your List Price for a Book is higher than permitted under the Digital Pricing Page or Print Pricing Page, as applicable, we will be entitled to deem it modified so that it is equal to the maximum List Price permitted when calculating Royalties due to you under this Agreement.

5.4.2 When We Pay You. Unless otherwise specified in Digital Pricing Page or Print Pricing Page, each Amazon party will pay Royalties due on Book sales approximately 60 days following the end of the calendar month during which the sales were made. At the time of payment, we will make available to you an online report detailing sales of Books and corresponding Royalties.

5.4.3 Payment Currencies. If you change your payment currency, the change will be effective on the first day of the following calendar month (unless we make an earlier period available). If we pay you in a currency other than the Sale Currency, we will convert the Royalties due from the Sale Currency to the payment currency at an exchange rate we determine, which will be inclusive of all fees and charges for the conversion.

5.4.4 Payment Terms for Brazilian Publishers.  If you are a publisher located in Brazil, you must provide us with a Brazilian bank account.  Upon providing us with that bank account information, we will pay you Royalties for sales made from amazon.com.br in Brazilian Reais. For sales other than sales from amazon.com.br, you may elect to receive payment in another payment currency.  If you fail to provide us with a Brazilian bank account, you will be deemed to have instructed us to convert the Royalties due from sales from amazon.com.br to an alternative payment currency and remit those Royalties to the bank account you have provided to us.

5.4.5 Payment Policies. We may require you to provide certain information or to register a valid bank account in your KDP account in order to receive Royalty payments, in which case we will not be obligated to make Royalty payments to you unless you do so. We may establish other payment policies from time to time, such as minimum payment amounts for different payment methods and check fees.

5.4.6 Payment Disputes. You may not bring a suit or other legal proceeding against us with regard to any statement unless you bring it within six months after the date the statement is available. Any such proceeding will be limited to a determination of the amount of monies, if any, payable by us to you for the accounting periods in question, and your sole remedy will be the recovery of those monies with no interest.

5.4.7 Offsets, etc. We can withhold Royalties and offset them against future payments as indicated below. Our exercise of these rights does not limit other rights we may have to withhold or offset Royalties or exercise other remedies.
• If we pay you a Royalty on a sale and later issue a refund, return, or credit for that sale, we may offset the amount of the Royalty previously paid for the sale against future Royalties, or require you to remit that amount to us.
• If a third party asserts that you did not have all rights required to make one of your Books available through the Program, we may hold all Royalties due to you until we reasonably determine the validity of

the third party claim. If we determine that you did not have all of those rights or that you have otherwise breached your representations and warranties or our Content Guidelines with regard to a Book, we will not owe you Royalties for that Book and we may offset any of those Royalties that were previously paid against future Royalties, or require you to remit them to us.

• Upon termination of this Agreement, we may withhold all Royalties due for a period of three months from the date they would otherwise be payable in order to ensure our ability to off-set any refunds or other offsets we are entitled to take against the Royalties.

• If we terminate this Agreement because you have breached your representations and warranties or our Content Guidelines, you forfeit all Royalties not yet paid to you. If after we have terminated your account you open a new account without our express permission, we will not owe you any Royalties through the new account.

5.4.8 Taxes. The Amazon parties (or their affiliates) are responsible for collecting and remitting any and all taxes imposed on their respective sales of Books to customers. You are responsible for any income or other taxes due and payable resulting from payments to you by an Amazon party under this Agreement. Accordingly, unless otherwise stated, the amounts due to you hereunder are inclusive of any taxes that may apply to such payments. The Amazon parties maintain the right, however, to deduct or withhold any and all applicable taxes from amounts due by them to you, and the amounts due, as reduced by those deductions or withholdings, will constitute full payment and settlement to you.

5.5 Grant of Rights. You grant to each Amazon party, throughout the term of this Agreement, a nonexclusive, irrevocable, right and license to print (on-demand and in anticipation of customer demand) and distribute Books, directly and through third-party distributors, in all formats you choose to make available through KDP by all distribution means available. This right includes, without limitation, the right to: (a) reproduce, index and store Books on one or more computer facilities, and reformat, convert and encode Books; (b) display, market, transmit, distribute, sell, license and otherwise make available all or any portion of Books through Amazon Properties (as defined below), for customers and prospective customers to download, access, copy and paste, print, annotate and/or view online and offline, including on portable devices; (c) permit customers to "store" Digital Books that they have purchased from us on servers ("Virtual Storage") and to access and re-download such Digital Books from Virtual Storage from time to time both during and after the term of this Agreement; (d) display and distribute (i) your trademarks and logos in the form you provide them to us or within Books (with such modifications as are necessary to optimize their viewing), and (ii) portions of Books, in each case solely for the purposes of marketing, soliciting and selling Books and related Amazon offerings; (e) use, reproduce, adapt, modify, and distribute, as we determine appropriate, in our sole discretion, any metadata that you provide in connection with Books; and (f) transmit, reproduce and otherwise use (or cause the reformatting, transmission, reproduction, and/or other use of) Books as mere technological incidents to and for the limited purpose of technically enabling the foregoing (e.g., caching to enable display). In addition, you agree that we may permit our affiliates and independent contractors, and our affiliates' independent contractors, to exercise the rights that you grant to us in this Agreement. "Amazon Properties" means any web site, application or online point of presence, on any platform, that is owned or operated by or under license by Amazon or co-branded with Amazon, and any web site, application, device or online point of presence through which any Amazon Properties or products available for sale on them are syndicated, offered, merchandised, advertised or described. You grant us

the rights set forth in this Section 5.5 on a worldwide basis; however, if we make available to you a procedure for indicating that you do not have worldwide distribution rights to a Digital Book, then the territory for the sale of that Digital Book will be those territories for which you indicate, through the procedure we provide to you, that you have distribution rights.

5.6 DRM and Geofiltering Technology. We may, but are not obligated, to provide you the option to apply DRM technology in connection with the distribution of your Digital Books. If we provide you the option to apply DRM technology, you acknowledge that we make no representations as to the efficacy of the DRM and will not be responsible for any failure of the DRM. We also may, but are not obligated, to use geofiltering technology as a way of determining which customers are entitled to purchase Digital Books, for example, where you indicate that you do not have worldwide distribution rights to a Digital Book through the procedure we provide to you for that purpose. If we use geofiltering technology when distributing your Digital Books, distribution will be deemed to have taken place within the permitted distribution territories for the Digital Books, even though customers may, in fact, be located outside those territories.

5.7 Rights Clearances and Rights Dispute Resolution. You will obtain and pay for any and all necessary clearances and licenses for the Books to permit our exercise of the rights granted under this Agreement without any further payment obligation by us, including, without limitation, all royalties and other income due to any copyright owner. If you notify us through the procedure we provide on the applicable Amazon Property for making claims of copyright infringement that a third party has made a Book available for distribution through the Program (or for distribution in a particular territory through the Program) that you have the exclusive right to make available under the Program, then, upon your request and after verification of your claim, we will pay you the Royalties due in connection with any sales of the Book through the Program, and will remove the Book from future sale through the Program, as your sole and exclusive remedy.

5.8 Representations, Warranties and Indemnities. You represent and warrant that: (a) you have the full right, power and authority to enter into and fully perform this Agreement and will comply with the terms of this Agreement; (b) prior to you or your designee's delivery of any content, you will have obtained all rights that are necessary for the exercise the rights granted under this Agreement; (c) neither the exercise of the rights authorized under this Agreement nor any materials embodied in the content nor its sale or distribution as authorized in this Agreement will violate or infringe upon the intellectual property, proprietary or other rights of any person or entity, including, without limitation, contractual rights, copyrights, trademarks, common law rights, rights of publicity, or privacy, or moral rights, or contain defamatory material or violate any laws or regulations of any jurisdiction; (d) you will ensure that all Books delivered under the Program comply with the technical delivery specifications provided by us; (e) you will be solely responsible for accounting and paying any co-owners or co-administrators of any Book or portion thereof any royalties with respect to the uses of the content and their respective shares, if any, of any monies payable under this Agreement; and (f) you will not attempt to exploit the KDP service or any other Amazon program or service. To the fullest extent permitted by applicable law, you will indemnify, defend and hold Amazon, its officers, directors, employees, affiliates, subcontractors and assigns harmless from and against any loss, claim, liability, damage, action or cause of action (including reasonable attorneys' fees) that arises from any breach of your representations,

warranties or obligations set forth in this Agreement. We will be entitled, at our expense, to participate in the defense and settlement of the claim or action with counsel of our own choosing.

6 Ownership and Control of Amazon Properties/ Feedback. Subject to the authorizations you grant to us under this Agreement, as between us and you, you retain all ownership rights in and to the copyrights and all other rights and interest in and to your Books. We retain all ownership rights in and to the copyrights and all other rights and interests in and to the Program, the Amazon Properties, and any materials we use or provide to you for use relating to your Book (such as a generic cover image used for your Book if you do not provide one). We are solely responsible for, and will have full discretion with respect to the terms, features, and operation of the Program and the Amazon Properties and related marketing, but our use of the Books will be subject to the terms of this Agreement. In the event that you elect to provide suggestions, ideas, or other feedback to Amazon or any of its affiliates in connection with the Amazon Properties or the Program ("Feedback"), Amazon and its affiliates will be free to use and exploit the same in any manner without restriction and without any need to compensate you. This Agreement does not grant you any license or other rights to any intellectual property or technology owned or operated by us or any of our affiliates, including, without limitation, any trademarks or trade names. Nothing in this Agreement restricts any rights we may have under applicable law or a separate permission.

7 Confidentiality. You will not, without our express, prior written permission: (a) issue any press release or make any other public disclosures regarding this Agreement or its terms; (b) disclose Amazon Confidential Information (as defined below) to any third party or to any employee other than an employee who needs to know the information; or (c) use Amazon Confidential Information for any purpose other than the performance of this Agreement. You may however disclose Amazon Confidential Information as required to comply with applicable law, provided you: (i) give us prior written notice sufficient to allow us to seek a protective order or other appropriate remedy; (ii) disclose only that Amazon Confidential Information as is required by applicable law; and (iii) use reasonable efforts to obtain confidential treatment for any Amazon Confidential Information so disclosed. "Amazon Confidential Information" means (1) any information regarding Amazon, its affiliates, and their businesses, including, without limitation, information relating to our technology, customers, business plans, promotional and marketing activities, finances and other business affairs, (2) the nature, content and existence of any communications between you and us, and (3) any sales data relating to the sale of Books or other information we provide or make available to you in connection with the Program. Amazon Confidential Information does not include information that (A) is or becomes publicly available without breach of this Agreement, (B) you can show by documentation to have been known to you at the time you receive it from us, (C) you receive from a third party who did not acquire or disclose such information by a wrongful or tortious act, or (D) you can show by documentation that you have independently developed without reference to any Amazon Confidential Information. Without limiting the survivability of any other provision of this Agreement, this Section 7 will survive three years following the termination of this Agreement.

8 Limitation of Liability. THE PROGRAM IS PROVIDED "AS IS." WE WILL IN NO EVENT BE LIABLE FOR ANY LOSS OF DATA, LOSS OF PROFITS, COST OF COVER OR OTHER SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY OR RELIANCE DAMAGES ARISING FROM OR IN RELATION TO THIS AGREEMENT,

OR FOR ANY EQUITABLE REMEDY OF DISGORGEMENT OR OTHERWISE, HOWEVER CAUSED AND REGARDLESS OF THEORY OF LIABILITY. IN NO EVENT WILL OUR LIABILITY UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES DUE AND PAYABLE BY AMAZON UNDER THIS AGREEMENT FOR THE TWELVE-MONTH PERIOD PRECEDING THE CLAIM. WE SPECIFICALLY DISCLAIM, WITH RESPECT TO ALL SERVICES, SOFTWARE, CONTENT OR PRODUCTS PROVIDED BY OR ON BEHALF OF US IN CONNECTION WITH THIS AGREEMENT, ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. PUBLISHER ACKNOWLEDGES AND AGREES THAT AMAZON CANNOT ENSURE THAT BOOKS SUBMITTED BY OR ON BEHALF OF PUBLISHER WILL BE PROTECTED FROM THEFT OR MISUSE OR THAT CUSTOMERS WILL COMPLY WITH ANY CONTENT USAGE RULES AMAZON MAY MAKE APPLICABLE IN CONNECTION WITH USE OF BOOKS, AND AMAZON WILL HAVE NO LIABILITY ARISING FROM A FAILURE OF ANY SECURITY SYSTEM OR PROCEDURE OR OF ANY CUSTOMER TO COMPLY WITH ANY CONTENT USAGE RULES. KDP RELIES ON COMPLEX SYSTEMS AND PROCESSES.  WE STRIVE TO MAKE OUR SYSTEMS AND PROCESSES ERROR-FREE AND EFFICIENT, BUT WE CANNOT GUARANTEE THAT THEY WILL BE, AND WE WILL HAVE NO LIABILITY ARISING FROM SYSTEM OR PROCESS FAILURES, INTERRUPTIONS, INACCURACIES, ERRORS OR LATENCIES.

9 Force Majeure. Amazon will not be liable to you for any failure or delay in the performance of its obligations under this Agreement caused by any event or circumstance beyond its control, including, but not limited to, denial-of-service attacks, insurrection, fires, flood, storm, explosions, acts of God, war, terrorism, and labor conditions.

10 General Legal Provisions.

10.1 Disputes. Any dispute or claim relating in any way to this Agreement or KDP will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify. The United States Federal Arbitration Act and federal arbitration law apply to this Agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051, USA. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879 (in the United States). Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Amazon will not to seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the United States county where you live or at another mutually agreed location. You and we each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration you and we each waive any right to a jury trial. You or we may bring suit in court on an individual basis only, and not

in a class, consolidated or representative action, to apply for injunctive remedies. You may bring any such suit for injunctive remedies only in the courts of the State of Washington, USA.

10.2 Applicable Law. The United States Federal Arbitration Act, applicable United States federal law, and the laws of the state of Washington, USA, without regard to principles of conflict of laws, will govern this Agreement and any dispute of any sort that might arise between you and Amazon relating to this Agreement or the Program.

10.3 Other Legal provisions. This Agreement may not be amended, except in writing signed by both parties or as provided in Section 2 above. If any provision of this Agreement is held invalid by a court or other tribunal with jurisdiction over the parties to this Agreement, that provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law, and the remainder of this Agreement will remain in full force and effect. The parties to this Agreement are independent contractors. Each party will bear its own costs and expenses in performing this Agreement. The failure of either party to enforce any provision of this Agreement will not constitute a waiver of the party's rights to subsequently enforce the provision. Any Amazon affiliate may join as a party to this Agreement and will notify you if it does. The joining Amazon affiliate will be entitled to exercise the rights you grant under this Agreement. Each Amazon party is severally liable for its own obligations under this Agreement and is not jointly liable for the obligations of other Amazon parties. Neither party may assign any of its rights or obligations under this Agreement, whether by operation of law or otherwise, without the prior written consent of the other, except that (a) Amazon may assign any of its rights and obligations under this Agreement without consent and (b) you may assign all of your rights and obligations under this Agreement to any corporation or other entity without consent in connection with the sale of all or substantially all of your assets, but you must give Amazon written notice of the assignment no later than ten (10) business days following the assignment. Subject to the foregoing limitation, this Agreement will be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns. This Agreement constitutes the entire agreement between the parties with respect to its subject matter, supersedes any and all prior or contemporaneous agreements between the parties with respect to its subject matter, and does not confer upon any other person other than the parties any rights or remedies. You consent to the use of electronic means to complete this Agreement and to provide you with any notices we give you in relation to this Agreement. To be effective, any notice given by a party under this Agreement must be in writing and delivered (i) if by an Amazon party, via email, via a posting on the Program website or via a message through your Program account, or (ii) if by you to Amazon Digital Services LLC, via email to kdp-support@amazon.com with a copy to contracts-legal@amazon.com, and if by you to Amazon Media EU S.à.r.l., via email to eu-kdpcontractnotice@amazon.lu with a copy to eu-contracts@amazon.lu. Notices will be effective and deemed received on the date transmitted or posted.
Terms and Conditions for Optional Programs and Services

Terms and Conditions for KDP Select Program.

KDP Select is an option for KDP publishers. While enrolled in KDP Select, your Digital Book must be exclusive to us and will be included in Kindle Unlimited and any substantially equivalent Kindle subscription programs ("Kindle Subscription Programs") and the Kindle Owners' Lending Library where it

will be eligible to earn a share of a monthly cash fund. Additionally, by including your Digital Book in KDP Select, your Digital Book will be eligible for various other KDP Select Benefits, including enrollment in Kindle Countdown Deals, free promotions, and the ability to earn 70% royalty for sales to customers in territories outlined in the Digital Pricing Page.

**1 Exclusivity.** When you include a Digital Book in KDP Select, you give us the exclusive right to sell and distribute your Digital Book in digital format while your book is in KDP Select. During this period of exclusivity, you cannot sell or distribute, or give anyone else the right to sell or distribute, your Digital Book (or a book that is substantially similar), in digital format in any territory where you have rights.

2 KDP Select Benefits.

2.1 Promotional Pricing Programs. During each 90-day KDP Select enrollment term, you may run your Digital Book in either a Kindle Countdown Deals or a free promotion.
2.1(a) Kindle Countdown Deals. For additional details, please see the Kindle Countdown Deals page. Kindle Countdown Deals allow you to promote your Digital Book for a limited period of time at increasing Promotional List Prices. If you are compliant with this Agreement, for each Digital Book sold to a customer through Kindle Countdown Deals, the Amazon party that made the sale will pay you a Royalty based on the "Promotional List Price" that you provide, as described on the Digital Pricing Page, net of refunds, bad debt, and any VAT, sales or other taxes charged to a customer or applied with respect to sales to a customer. As with any List Price, to the extent not prohibited by applicable local laws, we have the discretion to set the retail customer price at which your Digital Books are sold.
2.1(b) Free Promotions. You can schedule one or more free promotions for your Digital Book for up to a total period of 5 days during each 90-day period your Digital Book is in KDP Select. A free promotion is the offering of your Digital Book to customers for a price of zero. You will not receive any Royalties on your Digital Book during a free promotion. Free promotions may not be available for sales to customers in certain countries. If you don't use all 5 free promotion days during the 90-day period, you can't roll them over to future periods. Scheduled start times and end times of free promotions are approximate due to potential system latencies.

2.2 Inclusion in Kindle Subscription Programs and the Kindle Owners' Lending Library. Digital Books included in KDP Select will be automatically included in Kindle Subscription Programs and the Kindle Owners' Lending Library. Find more information about Kindle Subscription Programs here and more information about the Kindle Owners' Lending Library here. Kindle Subscription Programs and the Kindle Owners' Lending Library may not be available on all Amazon websites or to all customers. Your Digital Book will not be available through the Kindle Owners' Lending Library Program during any period when it is available for free in the Kindle store.
For KDP Publishers established in France only: Pursuant to the recommendations of the France Book Mediator regarding ebooks subscription services, KDP publishers based in France must set a price per page for each Digital Book available in the Abonnement Kindle program (the Kindle Unlimited equivalent in France). The price per page you set will not impact your Royalties, you will continue to be paid a share of the fund as described in Section 2.3 below. Please follow the instructions on this page to set a price per page. We have implemented the "mutualization" model among all subscribers residing in France. Please see this page for more details.

2.3 KDP Select Fund. We will establish a fund on a monthly basis and you will be eligible to earn a share of that fund for customers reading your Digital Books included in the Kindle Subscription Programs and Kindle Owners' Lending Library Programs. We will allocate portions of the fund to each marketplace where the programs are available and you will earn a share of the monthly fund based on the amount of your content read by customers in each marketplace. These shares are your total Royalty for customer access to your Digital Books through the Kindle Subscription Programs and Kindle Owners' Lending Library Programs. We will set, in our discretion, the criteria for determining how much of your content is read and how to determine the proportionate allocation of the fund. We may publically announce the top Digital Books, including the author, publisher, number of qualified reads and borrows, and KDP Select fund royalties earned.

2.4 70% Royalty in Brazil, Japan, Mexico, and India. Digital Books enrolled in KDP Select will be eligible to earn 70% royalty for sales to customers in Brazil, Japan, Mexico, and India. The List Prices you set for Brazil, Japan, Mexico, and India must also meet the 70% List Price requirements for sales to customers in Brazil, Japan, Mexico, and India. If your Digital Book is not enrolled in KDP Select or you do not meet the 70% List Price requirements, you will earn 35% royalty.

3 Period of Participation and Automatic Renewal. Once you include a Digital Book in KDP Select, your Digital Book will be in KDP Select for a period of 90 days, unless we remove your Digital Book from KDP Select. Your Digital Book's participation will automatically renew for additional 90-day periods, unless you opt out through the KDP website before renewal. We can end KDP Select at any time in our discretion; if we do, these terms and conditions will no longer be in effect, except Section 5 will survive. We may allow a customer who accesses your Digital Book through Kindle Subscription Programs or the Kindle Owners' Lending Library to continue to keep it checked out for as long as they want, including after your Digital Book's participation in KDP Select ends.

4 Book Eligibility. Because this option is for exclusive content, if you do not control the exclusive rights to your Digital Book or the primary content in your Digital Book, you cannot include it in KDP Select. For example, if your Digital Book consists primarily of content that is in the public domain or licensed by you on a non-exclusive basis (i.e., if others can also publish this content), you cannot include it in KDP Select. We reserve the right to determine the types of Digital Books that we accept in KDP Select. We can choose not to accept your Digital Book in KDP Select or to remove it from KDP Select at any time in our discretion.

5 Your Commitment. Your commitment to these terms and conditions is important, and the benefits we provide to you as part of this option are conditioned on your following through on your commitments. If you un-publish your Digital Book, we will remove it from the Kindle Subscription Programs and the Kindle Owners' Lending Library, but you must continue to comply with these commitments, including exclusivity, through the remainder of the Digital Book's then-current 90-day period of participation in KDP Select. If you don't comply with these KDP Select terms and conditions, we will not owe you Royalties for that Digital Book for the Kindle Subscription Programs or Kindle Owners' Lending Library Programs, and we may offset any of those Royalties that were previously paid against future Royalties, or require you to remit them to us. We may also withhold your Royalty payments on all your Digital

Books for a period of up to 90 days while we investigate. This doesn't limit other remedies we have, such as prohibiting your future participation in KDP Select or KDP generally.

Terms and Conditions for Kindle MatchBook Program

You may enroll each Digital Book that you distribute through the Program in Kindle MatchBook, which allows customers who have purchased a new, physical edition of your book from Amazon to obtain a Digital Book edition of the title at a reduced price or for free. Before including your Digital Book in Kindle MatchBook, please read these terms and conditions carefully.

1 Enrollment. You may enroll your Digital Book in Kindle MatchBook by providing a Promotional List Price.  Once enrolled, you may opt-out of Kindle MatchBook or modify your Kindle MatchBook Promotional List Price at any time. For additional details, please see the Kindle MatchBook page.

2 Publisher Payments.  If you are not in breach of your obligations under this Agreement, for each Digital Book sold to a customer through Kindle MatchBook, the Amazon party that made the sale will pay you a Royalty based on the Promotional List Price, exclusive of VAT, that you provide, as described in the Digital Pricing Page, net of refunds and bad debt.  If you set a Promotional List Price as free, we will not make any payment to you based on sales of that Digital Book.

3 Customer Prices. To the extent not prohibited by applicable local laws, we have sole and complete discretion to set the retail customer price at which your Digital Books are sold through the Kindle MatchBook program.

Terms and Conditions for KDP Pre-Orders

You may make an eligible Digital Book that meets pre-order requirements available for customer pre-order up to 90 days in advance of that Digital Book's official release date.

1 Enrollment.  You may make your eligible Digital Book available for pre-order by choosing "pre-order" as your book release option during title set-up.  We have established important deadlines for pre-order enrollment to ensure a positive customer experience.  If you miss these deadlines, we may suspend your access to pre-order and customer pre-orders may be cancelled.  For additional details on pre-order enrollment and requirements, please see the KDP pre-orders page.

2 Publisher Payments.  Royalties for pre-order sales will be paid approximately 60 days following the end of the calendar month of the Digital Book's actual release date.

3 Pre-Order Price Guarantee.  Amazon offers customers a Pre-order Price Guarantee for pre-orders on certain Amazon websites that guarantees that a customer is charged the lowest price offered by Amazon between the time the customer places the order and the end of the day of the release date. As a result, if you lower the List Price of a Digital Book while it is available for pre-order, we may charge customers that pre-ordered that Digital Book before the price decrease the lower price.  Your Royalty will be based on the actual price we charge customers as a result of our Pre-order Price Guarantee, net of refunds, bad debt, and any VAT, sales or other taxes charged to a customer or applied with respect to sales to a customer.

Recent Changes to the Agreement

We updated the Agreement on the date listed at the top of this Agreement in connection with the launch of the Print Book feature of KDP. We also updated the references to Amazon's Privacy Notice for

individuals located in the EU, modified Sections 4.2 and 5.8, and added the new Print Pricing Page. You should carefully review the revised Agreement in its entirety to ensure you understand fully all terms of the revised Agreement.

# EXHIBIT 2

Last Updated: November 8, 2023

This agreement changed on the date listed above.
See an explanation of the changes at the end of this document.

Kindle Direct Publishing Terms and Conditions

This agreement (the "Agreement") is a binding agreement between the individual or the entity identified in your Kindle Direct Publishing ("KDP") account ("you" or "Publisher") and each Amazon party. The "Amazon parties" are, individually, Amazon.com Services LLC, Amazon Media EU S.à r.l., Amazon Services International LLC, Amazon Serviços de Varejo do Brasil Ltda., Amazon Mexico Services, Inc., Amazon Australia Services, Inc., Amazon Asia-Pacific Holdings Private Limited, and each other Amazon affiliate that joins as a party to this Agreement. An Amazon "affiliate" is any entity that directly or indirectly controls, is controlled by, or is under common control with an Amazon party. "Amazon," "we" or "us" means, together, the Amazon parties and their affiliates.

This Agreement provides the terms and conditions of your participation in the KDP self-publication and distribution program (the "Program") and your distribution of digital content through the Program (all such content, "Digital Books") and your distribution of print content through the Program (all such content, "Print Books" and together with Digital Books, "Books"), and consists of:
• the terms set forth below;
• the Digital Book Pricing Page and the Print Book Pricing Page;
• all rules and policies for participating in the Program provided on the KDP website at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/ ("Program Policies");
• the Amazon.com Conditions of Use; and
• the Amazon.com Privacy Notice.

For individuals located in the European Union, the United Kingdom, Brazil, or Australia only: The Amazon.com Privacy Notice is not part of your Agreement. The version of this notice applicable to you is based on your location and is available for your review here.
Any version of this Agreement in a language other than English is provided for convenience and the English language version will control if there is any conflict. Given the importance of this Agreement, we encourage you to study it carefully. We welcome feedback on this Agreement at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/.

1 Agreement Acceptance. You accept this Agreement and agree to be bound by its terms by either (a) clicking agree or accept where you're given the option to do so or (b) by using the Program, or any part of it. If you don't accept the terms, you are not entitled to use the Program and you must immediately withdraw your Books from further distribution through the Program and terminate your use of the Program. If the Publisher is an entity, the individual person who accepts this Agreement for the Publisher represents and warrants by such acceptance that they are entitled to enter this Agreement as an authorized representative of Publisher and to bind Publisher to the terms of this Agreement.

Nothing in this agreement is intended to (1) exclude, restrict or modify any right or remedy you have in statute or otherwise, to the extent that right or remedy cannot be excluded, restricted or modified under applicable law; or (2) limit or exclude our liability, or require you to indemnify us to the extent any loss is caused by our gross negligence or criminal conduct, as evidenced by a final non-appealable order.

2 Agreement Amendment. The Program will change over time and the terms of this Agreement will need to change over time as well. We reserve the right to change the terms of this Agreement. We will give you notice of the changes by one or more of the following methods: (1) posting new terms in place of the old at http://kdp.amazon.com/ and http://kdp.amazon.co.jp/ with a revision date indicated at the top; (2) sending an email to the email address then registered for your Program account; (3) posting in the KDP Community Forum at https://www.kdpcommunity.com; (4) posting a banner in the KDP Portal; or (5) other reasonably substitutable means. For changes to the terms of Sections 5.4.1 (Royalties) or 5.5 (Grant of Rights), we will give you notice of the changes by two or more of the foregoing methods. You are responsible for checking for updates and your acceptance of the changes is as set forth in Section 1 (Agreement Acceptance). If you do not agree to the changes, you must immediately withdraw your Books from further distribution through the Program and terminate your use of the Program. Here are the rules for when changes will be effective and binding on you:

2.1 Changes to Agreement Terms Other than Those in Sections 5.4.1 (Royalties) or 5.5 (Grant of Rights). Changes to terms of this Agreement other than those contained in Section 5.4.1 (Royalties) or 5.5 (Grant of Rights) are effective on the date we post or send the changes, unless we provide a later effective date at the time we post or send the changes.

2.2 Changes to the Terms of Sections 5.4.1 (Royalties) or 5.5 (Grant of Rights). Changes to terms of this Agreement contained in Section 5.4.1 (Royalties) or 5.5 (Grant of Rights) will be effective and binding on you on the date 30 days from the date of posting or on the date you accept the changes as set forth in Section 1 (Agreement Acceptance) after such notice, whichever first occurs.

3 Term and Termination

The term of this Agreement will begin upon your acceptance of it and will continue until it is terminated by us or by you. We are entitled to terminate this Agreement and your access to our Program account or suspend your Program account at any time if we have concerns with your account, or activity relating to your account, or if you are in breach of applicable laws or this Agreement. We will notify you upon termination and will provide instructions regarding how to appeal that termination if you believe it is in error. You are entitled to terminate at any time by providing us notice of termination, in which event we will cease selling your Digital Books and on-demand printings of your Print Books within 5 business days from the date you provide us notice of termination.  We may continue to sell any inventory we have of your Print Books. Following termination or suspension, we may fulfill any customer orders for your Books pending as of the date of termination or suspension, and we may continue to maintain digital copies of your Digital

Books in order to provide continuing access to or re-downloads of your Digital Books, as well as digital copies of your Books to support customers who have purchased a Book prior to termination or suspension. The following provisions of this Agreement will survive termination of this Agreement: Sections 1, 3, 5.4, 5.5, 5.6, 5.7, 5.8, 6, 7, 8, 9, 10. All rights to Digital Books acquired by customers will survive termination.

4 Account Eligibility and Registration

4.1 Eligibility. You must have an active Program account in order to participate in the Program. You represent that you are at least 18 years old (or the age of majority where you reside, whichever is older) and that you are able to form a legally binding contract. A parent or guardian of a minor can open a KDP account and be the Publisher of the minor's Book.

4.2 Account Information; No Multiple Accounts. You must ensure that all information you provide in connection with establishing your Program account, such as your legal name, the legal name of your business, date of birth, date of incorporation or formation of your business, address, email, and payment information is accurate when you provide it, and you must ensure that it at all times remains accurate, complete, and valid as long as you use the Program. We may require you to provide additional information to verify the information you have provided about your business or your identity as a condition for your continued participation in the Program, or before we start or continue making Royalty payments to you. You authorize us to make, directly or through any third party, any inquiries we consider necessary to validate information that you provide to us, including checking commercial databases and utilizing any other verification processes. We may disclose your legal name and contact information in accordance with the terms of our Privacy Notice, including to comply with law or protect the rights of Amazon, our users, or others, regardless of what you enter as your author name. You may maintain only one account at a time. If we terminate your account, you will not establish a new account. You will not use false identities or impersonate any other person or use a username or password you are not authorized to use. You also consent to us sending you emails relating to the Program and other publishing opportunities from time to time.

4.3 Account Security. You are solely responsible for safeguarding and maintaining the confidentiality of your account username and password and are responsible for all activities that occur under your account, whether or not you have authorized those activities. You are responsible and may be held liable for losses incurred by Amazon due to any such activities. You may not permit any third party to use the Program through your account and will not use the account of any third party. Your acceptance of this Agreement includes and is on behalf of any other party who uses the Program under or in connection with your account, such as an employee or contractor. You agree to immediately notify Amazon of any unauthorized use of your username, password or account.

5 Book Distribution Rights.

5.1 Delivery, Acceptance and Withdrawal.

5.1.1 Delivery. You must provide to us, at your own expense each Book you desire to distribute through the Program. You are responsible for retaining your own copy of any material provided to us, as we will not return to you any electronic files or physical content or media you deliver to us in connection with the Program. You must deliver all electronic files free and clear of viruses, worms and other potentially harmful or disrupting code.

5.1.2 Content Requirements. You must ensure that all Book content is in compliance with our Program Policies for content at the time you submit it to us. If you discover that content you have submitted does not comply, you must immediately withdraw the content by unpublishing it or by republishing content that complies through the Program procedures for Book withdrawal or republishing. We are entitled to remove or modify the metadata and product description, information or images you make available for your Books and we may also remove all or any part of your Book's cover art. For example, we may do so if you do not comply with our content requirements. You may not include in any Book any advertisements or other content that is primarily intended to advertise or promote products or services. You must ensure that all metadata you provide to us is current, complete, and accurate. If you discover that any metadata you have provided to us for a Book is inaccurate or incomplete, you must promptly submit corrected metadata to us through the Program procedures for metadata submission.

5.1.3 Book Rejection. We are entitled to determine what content we accept and distribute through the Program in our sole discretion. If we request that you provide additional information relating to your Books, such as information confirming that you have all rights required to permit our distribution of the Books, you will promptly provide the information requested, and you represent and warrant that any information and documentation you provide to us in response to such a request will be current, complete, and accurate. You authorize us, directly or through third parties, to make any inquiries we consider appropriate to verify your rights to permit our distribution of the Books and the accuracy of the information or documentation you provide to us with respect to those rights.

5.1.4 Book Withdrawal. You may withdraw your Digital Books from further sale and your Print Books from further on-demand printing in the Program at any time on five business days advance notice by following the then current Program procedures for Book withdrawal or unpublishing. We may fulfill any customer orders completed through the date the Books are available for sale and we may continue to sell any inventory we have of Print Books. All withdrawals of Books will apply prospectively only and not with respect to any customers who purchased the Books prior to the date of removal.

5.1.5 Reformatting. We may reformat your Books, and you acknowledge that unintentional errors may occur in the process of reformatting of your Books. If any such errors do occur, you may remove the affected Book from further sale in the Program as provided in Section 5.1.4 above, and this will be your only remedy for the errors. We may also correct any errors existing in a Book file as you deliver it to us.

5.2 Marketing and Promotion, Reviews, Lending Kindle Books and Optional Programs and Services.

5.2.1 Marketing and Promotion. We will determine all marketing and promotions related to the sale of your Books through the Program and may, without limitation, market and promote your Books by making chapters or portions of your Books available to prospective customers without charge,

and by permitting prospective customers to see excerpts of your Books in response to search queries. We will not owe you any fees for any marketing or promotional efforts. You acknowledge that we have no obligation to market, distribute, or offer for sale any Book, or to continue marketing, distributing or selling a Book after we have commenced doing so.

5.2.2 Reviews. You are subject to the Amazon Community Guidelines. We reserve the right to take any action with respect to your account in accordance with those Guidelines, including but not limited to the removal of any review that violates the Guidelines.

5.2.3 Lending Kindle Books. The Kindle Book Lending program enables customers who purchase a Digital Book to lend it subject to limitations we establish from time to time. All Digital Books made available through the Program are automatically included in the Kindle Book Lending program. However, for Digital Books that are in the 35% Royalty Option (as described in the Digital Book Pricing Page), you may choose to opt out of the Kindle Book Lending program. This will disable lending of the Digital Book by customers who purchase it after you have opted it out, but this will not affect the right of customers who purchased it when lending was enabled to continue to lend it. Digital Books that are in the 70% Royalty Option (as described in the Digital Book Pricing Page) cannot be opted out of the lending feature.

5.2.4 Optional Programs and Services. We may make available to you optional programs and services through KDP. Terms and conditions for those optional programs and services are included at the end of this Agreement. Those terms and conditions are part of this Agreement.

5.3 Pricing.

5.3.1 Providing Your List Price. The list price you provide to us is referred to in this Agreement as your "List Price." For some marketplaces, you will provide us a List Price inclusive of value added or similar taxes that are included within the customer purchase price of a product ("VAT"). Where your Royalty is calculated based on your List Price, it will be calculated based on your List Price exclusive of the VAT applicable to the customer. You may change your List Price through the KDP website, and your change will be effective within 5 business days. The Digital Book Pricing Page and the Print Book Pricing Page have additional requirements for List Prices that you must comply with. The List Price for purposes of the Royalty calculation will be the List Price effective in our systems at the time of customer purchase.

5.3.2 Currency Conversion. We may sell your Book using multiple currencies. When we do, we may convert the List Price you submit to other currencies (each, a "Sale Currency") at an exchange rate we determine, based on rates we receive from an exchange rate service. We may periodically update the converted Sale Price in order to reflect current exchange rates. If the converted List Price would be outside of the minimum or maximum List Price we accept for the Sale Currency, your List Price will be converted so that it is equal to the applicable minimum or maximum List Price for that Sale Currency. Minimum and maximum List Prices are specified here and here. For purposes of royalty calculations, the converted List Price in the Sale Currency will be your List Price when we offer and sell your Book in the Sale Currency.

5.3.3 Multiple List Prices. We may give you the option to provide multiple List Prices for a Book in different currencies or for different Amazon Properties (as defined in Section 5.5 (Grant of Rights)). If you provide multiple List Prices for a Book, we may use one of those List Prices for sales to customers in a particular country from all of our Amazon Properties, for consistency across those Amazon Properties. For example, if you provide us with a UK Pounds List Price and a US Dollar List Price for a Book, we may use the UK Pounds List Price for sales to UK customers from all of our websites, including Amazon.com, and we may convert it as provided in 5.3.2 above.
 5.3.4 Customer Prices. To the extent not prohibited by applicable laws, we have sole and complete discretion to set the retail customer price at which your Books are sold through the Program. We are solely responsible for processing payments, payment collection, requests for refunds and related customer service.

5.4 Royalties and Payments.

5.4.1 Royalties. If you are not in breach of your obligations under this Agreement, for each Book sold to a customer through the Program, the Amazon party that made the sale (or whose affiliate made the sale) will pay you the applicable Royalty set forth in the Digital Book Pricing Page or Print Book Pricing Page, as applicable, net of refunds, bad debt, and any VAT, sales or other taxes charged to a customer or applied with respect to sales to a customer. If your List Price for a Book is higher than permitted under the Digital Book Pricing Page or Print Book Pricing Page, as applicable, we will be entitled to deem it modified so that it is equal to the maximum List Price permitted when calculating Royalties due to you under this Agreement.

5.4.2 When We Pay You. Unless otherwise specified in Digital Book Pricing Page or Print Book Pricing Page, each Amazon party will pay Royalties due on Book sales approximately 60 days following the end of the calendar month during which the sales were made. At the time of payment, we will make available to you an online report detailing sales of Books and corresponding Royalties.

5.4.3 Payment Currencies. If you change your payment currency, the change will be effective on the first day of the following calendar month (unless we make an earlier period available). If we pay you in a currency other than the Sale Currency, we will convert the Royalties due from the Sale Currency to the payment currency at an exchange rate we determine, based on rates we receive from an exchange rate service, which will be inclusive of all fees and charges for the conversion.

5.4.4 Payment Terms for Brazilian Publishers.  If you are a publisher located in Brazil, you must provide us with a Brazilian bank account.  Upon providing us with that bank account information, we will pay you Royalties for sales made from amazon.com.br in Brazilian Reais. For sales other than sales from amazon.com.br, you may elect to receive payment in another payment currency.  If you fail to provide us with a Brazilian bank account, you will be deemed to have instructed us to convert the Royalties due from sales from amazon.com.br to an alternative payment currency and remit those Royalties to the bank account you have provided to us.

5.4.5 Payments made by Amazon Brazil. Payments made by Amazon Serviços de Varejo do Brasil Ltda. will have the following tax nature:

• When the beneficiary of the payment (individual or legal entity) is not the author or creator of a Book and is remunerated for exploiting the copyright of that Book listed on amazon.com.br, the payment is considered a royalty.

• When the beneficiary of the payment (individual or legal entity) is the author or creator of a Book and is remunerated for exploiting the copyright of that Book listed on amazon.com.br, the payment is considered a copyright.

5.4.6 Payment Policies. We may require you to provide certain information or to register a valid bank account in your KDP account in order to receive Royalty payments. If you fail to provide that information or if the information you provide is incomplete or inaccurate, we will not be obligated to make Royalty payments to you until we determine that the information has been provided or updated accordingly. We may establish other payment policies from time to time, such as minimum payment amounts for different payment methods and check fees, accessible on the KDP website.

5.4.7 Payment Disputes. You may not bring a suit or other legal proceeding against us with regard to any statement unless you bring it within six months after the date the statement is available. Any such proceeding will be limited to a determination of the amount of monies, if any, payable by us to you for the accounting periods in question, and your sole remedy will be the recovery of those monies with no interest.

5.4.8 Offsets, etc. We can withhold Royalties and offset them against future payments as indicated below. Our exercise of these rights does not limit other rights we may have to withhold or offset Royalties or exercise other remedies.

• If we pay you a Royalty on a sale and later issue a refund, return, or credit for that sale, we may offset the amount of the Royalty previously paid for the sale against future Royalties, or require you to remit that amount to us.

• If a third party asserts that you did not have all rights required to make one of your Books available through the Program, we may hold all Royalties due to you until we reasonably determine the validity of the third party claim. If we determine that you did not have all of those rights, we will not owe you Royalties for that Book and we may offset any of those Royalties that were previously paid against future Royalties, or require you to remit them to us.

• If we determine that you have breached your representations and warranties or our Content Guidelines with regard to a Book, we will not owe you Royalties for that Book and we may offset any of those Royalties that were previously paid against future Royalties, or require you to remit them to us.

• We may offset amounts you owe to us against Royalties due and may withhold Royalties for payment of amounts owed to us.

• Upon termination of this Agreement, we may withhold all Royalties due for a period of three months from the date they would otherwise be payable in order to ensure our ability to off-set any refunds or other offsets we are entitled to take against the Royalties.

• If we terminate this Agreement because you have breached your representations and warranties or our Content Guidelines, you forfeit all Royalties not yet paid to you. If after we have terminated your account you open a new account without our express permission, we will not owe you any Royalties through the new account.

• If we determine that deceptive, fraudulent, or illegal activity has occurred with respect to your Books or your Program account, then we may permanently withhold payments to you, and we may offset any payments previously paid against future payments or require you to remit them to us. We will use these funds to offset the costs of Amazon's enforcement efforts and/or to compensate third parties harmed by deceptive, fraudulent, or illegal conduct.

5.4.9 Taxes. The Amazon parties (or their affiliates) are responsible for collecting and remitting any and all taxes imposed on their respective sales of Books to customers. You are responsible for any income or other taxes due and payable resulting from payments to you by an Amazon party under this Agreement. Accordingly, unless otherwise stated, the amounts due to you hereunder are inclusive of any taxes that may apply to such payments. The Amazon parties maintain the right, however, to deduct or withhold any and all applicable taxes from amounts due by them to you, and the amounts due, as reduced by those deductions or withholdings, will constitute full payment and settlement to you.

5.5 Grant of Rights. You grant to each Amazon party, throughout the term of this Agreement, a nonexclusive, irrevocable, right and license to print (on-demand and in anticipation of customer demand) and distribute Books, directly and through third-party distributors, in all formats you choose to make available through KDP by all distribution means available. This right includes, without limitation, the right to: (a) reproduce, index and store Books on one or more computer facilities, and reformat, convert and encode Books; (b) display, market, transmit, distribute, sell, license and otherwise make available all or any portion of Books through Amazon Properties (as defined below), for customers and prospective customers to download, access, copy and paste, print, annotate and/or view online and offline, including on portable devices; (c) permit customers to "store" Digital Books that they have purchased from us on servers ("Virtual Storage") and to access and re-download such Digital Books from Virtual Storage from time to time both during and after the term of this Agreement; (d) display and distribute (i) your trademarks and logos in the form you provide them to us or within Books (with such modifications as are necessary to optimize their viewing), and (ii) portions of Books, in each case solely for the purposes of marketing, soliciting and selling Books and related Amazon offerings; (e) use, reproduce, adapt, modify, and distribute, as we determine appropriate, in our sole discretion, any metadata and product description, information or images that you make available in connection with Books; and (f) transmit, reproduce and otherwise use (or cause the reformatting, transmission, reproduction, and/or other use of) Books as mere technological incidents to and for the limited purpose of technically enabling the foregoing (e.g., caching to enable display). In addition, you agree that we may permit our affiliates and independent contractors, and our affiliates' independent contractors, to exercise the rights that you grant to us in this Agreement. "Amazon Properties" means any web site, application or online point of presence, on any platform, that is owned or operated by or under license by Amazon or co-branded with Amazon, and any web site, application, device or online point of presence through which any Amazon Properties or products available for sale on them are syndicated, offered, merchandised, advertised or described. You grant us the rights set forth in this Section 5.5 on a worldwide basis; however, if we make available to you a procedure for indicating that you do not have worldwide distribution rights to a Digital Book, then the territory for the sale of that Digital Book will be those territories for which you indicate, through the procedure we provide to you, that you have distribution rights, except as otherwise provided in the Program Policies.

5.6 DRM and Geofiltering Technology. We may, but are not obligated, to provide you the option to apply DRM technology in connection with the distribution of your Digital Books. If we provide you the option to apply DRM technology, you acknowledge that we make no representations as to the efficacy of the DRM and will not be responsible for any failure of the DRM. We also may, but are not obligated, to use geofiltering technology as a way of determining which customers are entitled to purchase Digital Books, for example, where you indicate that you do not have worldwide distribution rights to a Digital Book through the procedure we provide to you for that purpose. If we use geofiltering technology when distributing your Digital Books, distribution will be deemed to have taken place within the permitted distribution territories for the Digital Books, even though customers may, in fact, be located outside those territories.

5.7 Rights Clearances and Rights Dispute Resolution. You will obtain and pay for any and all necessary clearances and licenses for the Books to permit our exercise of the rights granted under this Agreement without any further payment obligation by us, including, without limitation, all royalties and other income due to any copyright owner. If you notify us through the procedure we provide on the applicable Amazon Property for making claims of copyright infringement that a third party has made a Book available for distribution through the Program (or for distribution in a particular territory through the Program) that you have the exclusive right to make available under the Program, then, upon your request and after verification of your claim, we will pay you the Royalties due in connection with any sales of the Book through the Program, and will remove the Book from future sale through the Program, as your sole and exclusive remedy.

5.8 Representations, Warranties and Indemnities. You represent and warrant that: (a) you have the full right, power and authority to enter into and fully perform this Agreement and will comply with the terms of this Agreement; (b) prior to your or your designee's delivery of any content, you will have obtained all rights that are necessary for the exercise of the rights granted under this Agreement; (c) neither the exercise of the rights authorized under this Agreement nor any materials embodied in the content nor its sale or distribution as authorized in this Agreement will violate or infringe upon the intellectual property, proprietary or other rights of any person or entity, including, without limitation, contractual rights, copyrights, trademarks, common law rights, rights of publicity, or privacy, or moral rights, or contain defamatory material or violate any laws or regulations of any jurisdiction; (d) you will ensure that all Books delivered under the Program comply with the technical delivery specifications provided by us; (e) you will be solely responsible for accounting and paying any co-owners or co-administrators of any Book or portion thereof any royalties with respect to the uses of the content and their respective shares, if any, of any monies payable under this Agreement; and (f) you will not attempt to exploit the KDP service or any other Amazon program or service. To the fullest extent permitted by applicable law, you will indemnify, defend and hold Amazon, its officers, directors, employees, affiliates, subcontractors, agents and assigns harmless from and against any loss, claim, liability, damage, action or cause of action (including reasonable attorneys' fees and costs) that arises from any breach or alleged breach of your representations, warranties or obligations set forth in this Agreement. We will be entitled, at our expense, to participate in the defense and settlement of the claim or action with counsel of our own choosing. You will not settle a claim pursuant to your indemnification obligations without our prior written consent (which will not be unreasonably withheld). Your duty to indemnify under this Section 5.8 will be independent from your other obligations under this Agreement.

6 Ownership and Control of Amazon Properties and Customer Data/ Feedback. Subject to the authorizations you grant to us under this Agreement, as between us and you, you retain all ownership rights in and to the copyrights and all other rights and interest in and to your Books. We retain all ownership rights in and to the copyrights and all other rights and interests in and to the Program, the Amazon Properties, and any materials we use or provide to you for use relating to your Book (such as a generic cover image used for your Book if you do not provide one). We retain sole ownership and control of all data obtained from customers and prospective customers in connection with the Program. We are solely responsible for, and will have full discretion with respect to the terms, features, and operation of the Program and the Amazon Properties and related marketing, but our use of the Books will be subject to the terms of this Agreement. In the event that you elect to provide suggestions, ideas, or other feedback to Amazon or any of its affiliates in connection with the Amazon Properties or the Program ("Feedback"), Amazon and its affiliates will be free to use and exploit the same in any manner without restriction and without any need to compensate you. This Agreement does not grant you any license or other rights to any intellectual property or technology owned or operated by us or any of our affiliates, including, without limitation, any trademarks or trade names. Nothing in this Agreement restricts any rights we may have under applicable law or a separate permission.

7 Confidentiality. You will not, without our express, prior written permission: (a) issue any press release or make any other public disclosures regarding this Agreement or its terms; (b) disclose Amazon Confidential Information (as defined below) to any third party or to any employee other than an employee who needs to know the information; or (c) use Amazon Confidential Information for any purpose other than the performance of this Agreement. You may however disclose Amazon Confidential Information as required to comply with applicable law, provided you: (i) give us prior written notice sufficient to allow us to seek a protective order or other appropriate remedy; (ii) disclose only that Amazon Confidential Information as is required by applicable law; and (iii) use reasonable efforts to obtain confidential treatment for any Amazon Confidential Information so disclosed. "Amazon Confidential Information" means (1) any information regarding Amazon, its affiliates, and their businesses, including, without limitation, information relating to our technology, customers, business plans, promotional and marketing activities, finances and other business affairs, (2) the nature, content and existence of any communications between you and us, and (3) any sales data relating to the sale of Books or other information we provide or make available to you in connection with the Program. Amazon Confidential Information does not include information that (A) is or becomes publicly available without breach of this Agreement, (B) you can show by documentation to have been known to you at the time you receive it from us, (C) you receive from a third party who did not acquire or disclose such information by a wrongful or tortious act, or (D) you can show by documentation that you have independently developed without reference to any Amazon Confidential Information. Without limiting the survivability of any other provision of this Agreement, this Section 7 will survive three years following the termination of this Agreement.

8 Limitation of Liability. THE PROGRAM IS PROVIDED "AS IS." WE WILL IN NO EVENT BE LIABLE FOR ANY LOSS OF DATA, LOSS OF PROFITS, COST OF COVER OR OTHER SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY OR RELIANCE DAMAGES ARISING FROM OR IN RELATION TO THIS AGREEMENT, OR FOR ANY EQUITABLE REMEDY OF DISGORGEMENT OR OTHERWISE, HOWEVER CAUSED AND REGARDLESS OF THEORY OF LIABILITY. IN NO EVENT WILL OUR LIABILITY UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES DUE AND PAYABLE BY AMAZON UNDER THIS AGREEMENT FOR THE TWELVE-MONTH PERIOD PRECEDING THE CLAIM. WE SPECIFICALLY DISCLAIM, WITH RESPECT TO ALL SERVICES, SOFTWARE, CONTENT OR PRODUCTS PROVIDED BY OR ON BEHALF OF US IN CONNECTION WITH THIS AGREEMENT, ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. PUBLISHER

ACKNOWLEDGES AND AGREES THAT AMAZON CANNOT ENSURE THAT BOOKS SUBMITTED BY OR ON BEHALF OF PUBLISHER WILL BE PROTECTED FROM THEFT OR MISUSE OR THAT CUSTOMERS WILL COMPLY WITH ANY CONTENT USAGE RULES AMAZON MAY MAKE APPLICABLE IN CONNECTION WITH USE OF BOOKS, AND AMAZON WILL HAVE NO LIABILITY ARISING FROM A FAILURE OF ANY SECURITY SYSTEM OR PROCEDURE OR OF ANY CUSTOMER TO COMPLY WITH ANY CONTENT USAGE RULES. KDP RELIES ON COMPLEX SYSTEMS AND PROCESSES.  WE STRIVE TO MAKE OUR SYSTEMS AND PROCESSES ERROR-FREE AND EFFICIENT, BUT WE CANNOT GUARANTEE THAT THEY WILL BE, AND WE WILL HAVE NO LIABILITY ARISING FROM SYSTEM OR PROCESS FAILURES, INTERRUPTIONS, INACCURACIES, ERRORS OR LATENCIES.

9 Force Majeure. Amazon will not be liable to you for any failure or delay in the performance of its obligations under this Agreement caused by any event or circumstance beyond its control, including, but not limited to, denial-of-service attacks, insurrection, fires, flood, storm, explosions, acts of God, war, terrorism, and labor conditions.

10 General Legal Provisions.

10.1 Disputes. Any dispute or claim relating in any way to this Agreement or KDP will be resolved by binding arbitration, rather than in court, except that either party may elect to proceed in small claims court in the United States if the claims qualify under applicable law. The United States Federal Arbitration Act and federal arbitration law apply to this Agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. Before you may begin an arbitration proceeding, you must send a letter notifying us of your intent to pursue arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501, USA. The arbitration will be conducted by the American Arbitration Association (AAA) under its Commercial Arbitration Rules. Payment of all filing, administration and arbitrator fees will be governed by the AAA's Commercial Fee Schedule. You and we each agree that the underlying award in arbitration may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules. The AAA's rules and fee schedules are available at www.adr.org or by calling 1-800-778-7879 (in the United States). You and we each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration you and we each waive any right to a jury trial and you and we agree that any such suit may proceed only in state or Federal court in King County, Washington.

10.2 Applicable Law. The United States Federal Arbitration Act, applicable United States federal law, and the laws of the state of Washington, USA, without regard to principles of conflict of laws, will govern this Agreement and any dispute of any sort that might arise between you and Amazon relating to this Agreement or the Program.

10.3 Other Legal provisions. This Agreement may not be amended, except in writing signed by both parties or as provided in Section 2 above. If any provision of this Agreement is held invalid by a court or other tribunal with jurisdiction over the parties to this Agreement, that provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law, and the remainder of this Agreement will remain in full force and effect. The parties to this Agreement are independent contractors. Each party will bear its own costs and expenses in performing this Agreement. The failure of either party to enforce any provision of this Agreement will not constitute a waiver of the party's rights to subsequently enforce the provision. Any Amazon affiliate may join as a party to this Agreement and will notify you if it does. The joining Amazon affiliate will be entitled to exercise the rights you grant under this Agreement. Each Amazon party is severally liable for its own obligations under this Agreement and is not jointly liable for the obligations of other Amazon parties. Neither party may assign any of its rights or obligations under this Agreement, whether by operation of law or otherwise, without the prior written consent of the other, except that (a) Amazon may assign any of its rights and obligations under this Agreement without consent and (b) you may assign all of your rights and obligations under this Agreement to any corporation or other entity without consent in connection with the sale of all or substantially all of your assets, but you must give Amazon written notice of the assignment no later than ten (10) business days following the assignment. Subject to the foregoing limitation, this Agreement will be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns. This Agreement constitutes the entire agreement between the parties with respect to its subject matter, supersedes any and all prior or contemporaneous agreements between the parties with respect to its subject matter, and does not confer upon any other person other than the parties any rights or remedies. You consent to the use of electronic means to complete this Agreement and to provide you with any notices we give you in relation to this Agreement. To be effective, any notice given by a party under this Agreement must be in writing and delivered (i) if by an Amazon party, via one or more of the methods described in Section 2 (Agreement Amendment), or (ii) if by you to Amazon Media EU S.à.r.l., via email to eu-kdpcontractnotice@amazon.lu with a copy to eu-contracts@amazon.lu and if by you to any other Amazon party, via email to kdpcontractnotice@amazon.com with a copy to contracts-legal@amazon.com. Notices will be effective and deemed received on the date transmitted or posted.

Terms and Conditions for Optional Programs and Services

Terms and Conditions for KDP Select Program.

KDP Select is an option for KDP publishers. While enrolled in KDP Select, your Digital Book must be exclusive to us and will be included in Kindle Unlimited and any substantially equivalent Kindle subscription programs ("Kindle Subscription Programs") where it will be eligible to earn a share of a monthly cash fund. Additionally, by including your Digital Book in KDP Select, your Digital Book will be eligible for various other KDP Select Benefits, including enrollment in Kindle Countdown Deals, free promotions, and the ability to earn 70% royalty for sales to customers in territories outlined in the Digital Book Pricing Page. If there is any conflict among the terms in this Agreement, these KDP Select Terms and Conditions govern over the general KDP Terms and Conditions above.

**1 Exclusivity.** When you include a Digital Book in KDP Select, you give us the exclusive right to sell and distribute your Digital Book in digital format while your book is in KDP Select. During this period of exclusivity, you cannot sell or distribute, or give anyone else the right to sell or distribute, your Digital Book (or a book that is substantially similar), in digital format in any territory where you have rights.

2 KDP Select Benefits.

2.1  Promotional Pricing Programs. During each 90-day KDP Select enrollment term, you may run your Digital Book in either a Kindle Countdown Deals or a free promotion.

2.1(a) Kindle Countdown Deals.  For additional details, please see the Kindle Countdown Deals page.  Kindle Countdown Deals allow you to promote your Digital Book for a limited period of time at increasing Promotional List Prices.  If you are compliant with this Agreement, for each Digital Book sold to a customer through Kindle Countdown Deals, the Amazon party that made the sale (or whose affiliate made the sale) will pay you a Royalty based on the "Promotional List Price" that you provide, as described on the Digital Book Pricing Page, net of refunds, bad debt, and any VAT, sales or other taxes charged to a customer or applied with respect to sales to a customer. As with any List Price, to the extent not prohibited by applicable local laws, we have the discretion to set the retail customer price at which your Digital Books are sold.

2.1(b) Free Promotions. You can schedule one or more free promotions for your Digital Book for up to a total period of 5 days during each 90-day period your Digital Book is in KDP Select. A free promotion is the offering of your Digital Book to customers for a price of zero. You will not receive any Royalties on your Digital Book during a free promotion. Free promotions may not be available for sales to customers in certain countries. If you don't use all 5 free promotion days during the 90-day period, you can't roll them over to future periods. Scheduled start times and end times of free promotions are approximate due to potential system latencies.

2.2 Inclusion in Kindle Subscription Programs. Digital Books included in KDP Select will be automatically included in Kindle Subscription Programs. Find more information about Kindle Subscription Programs here. Kindle Subscription Programs may not be available on all Amazon Properties or to all customers.

For KDP Publishers established in France only: Pursuant to the recommendations of the France Book Mediator regarding ebooks subscription services, KDP publishers based in France must set a price per page for each Digital Book available in the Abonnement Kindle program (the Kindle Unlimited equivalent in France). The price per page you set will not impact your Royalties, you will continue to be paid a share of the fund as described in Section 2.3 below. Please follow the instructions on this page to set a price per page. We have implemented the "mutualization" model among all subscribers residing in France.  Please see this page for more details.

2.3 KDP Select Fund. We will establish a fund on a monthly basis and you will be eligible to earn a share of that fund for customers reading your Digital Books included in the Kindle Subscription Programs. We will allocate portions of the fund to each marketplace where the programs are available and you will earn a share of the monthly fund based on the amount of your content read by customers in each marketplace. These shares are your total Royalty for customer access to your Digital Books through the Kindle Subscription Programs. We will set, in our sole discretion, the criteria for determining how much of your content is read and how to determine the proportionate allocation of the fund. We may publicly announce the top Digital Books, including the author, publisher, number of qualified reads and borrows, and KDP Select fund royalties earned.

2.4 70% Royalty in Brazil, Japan, Mexico, and India. Digital Books enrolled in KDP Select will be eligible to earn 70% royalty for sales to customers in Brazil, Japan, Mexico, and India. The List Prices you set for Brazil, Japan, Mexico, and India must also meet the 70% List Price requirements for sales to customers in Brazil, Japan, Mexico, and India. If your Digital Book is not enrolled in KDP Select or you do not meet the 70% List Price requirements, you will earn 35% royalty.

3 Period of Participation and Automatic Renewal. Once you include a Digital Book in KDP Select, your Digital Book will be in KDP Select for a period of 90 days, unless we remove your Digital Book from KDP Select. Your Digital Book's participation will automatically renew for additional 90-day periods, unless you opt out through the KDP website before renewal. We can end KDP Select at any time in our discretion; if we do, these terms and conditions will no longer be in effect, except Section 5 will survive. We may allow a customer who accesses your Digital Book through Kindle Subscription Programs to continue to keep it checked out for as long as they want, including after your Digital Book's participation in KDP Select ends.

4 Book Eligibility. Because this option is for exclusive content, if you do not control the exclusive rights to your Digital Book or the primary content in your Digital Book, you cannot include it in KDP Select. For example, if your Digital Book consists primarily of content that is in the public domain or licensed by you on a non-exclusive basis (i.e., if others can also publish this content), you cannot include it in KDP Select. We reserve the right to determine the types of Digital Books that we accept in KDP Select. We can choose not to accept your Digital Book in KDP Select or to remove it from KDP Select at any time in our discretion.

5 Your Commitment. Your commitment to these terms and conditions is important, and the benefits we provide to you as part of this option are conditioned on your following through on your commitments. If you unpublish your Digital Book, we will remove it from the Kindle Subscription Programs, but you must continue to comply with these commitments, including exclusivity, through the remainder of the Digital Book's then-current 90-day period of participation in KDP Select. If you don't comply with this Agreement or we determine that borrows or reading of your Digital Book originated from accounts attempting to manipulate our services, then we will not owe you Royalties for your Digital Books for the Kindle Subscription Programs, and we may offset any of those Royalties that were previously paid against future Royalties, or require you to remit them to us. We may also withhold your Royalty payments on all your Digital Books for a period of up to 90 days while we investigate. This doesn't limit other remedies we have, such as prohibiting your future participation in KDP Select or KDP generally. You must have an active Program account in order to be eligible to receive Royalties for the Kindle Subscription Programs.

Terms and Conditions for KDP Pre-Orders
You may make an eligible Digital Book that meets pre-order requirements available for customer pre-order up to 365 days in advance of that Digital Book's official release date.
1 Enrollment .  You may make your eligible Digital Book available for pre-order by choosing "pre-order" as your book release option during title set-up.  We have established important deadlines for pre-order enrollment to ensure a positive customer experience.  If you miss these deadlines, we may

suspend your access to pre-order and customer pre-orders may be cancelled.  For additional details on pre-order enrollment and requirements, please see the KDP pre-orders page.

2 Publisher Payments .  Royalties for pre-order sales will be paid approximately 60 days following the end of the calendar month of the Digital Book's actual release date.

3 Pre-Order Price Guarantee .  Amazon offers customers a Pre-order Price Guarantee for pre-orders on certain Amazon Properties that guarantees that a customer is charged the lowest price offered by Amazon between the time the customer places the order and the end of the day of the release date. As a result, if you lower the List Price of a Digital Book while it is available for pre-order, we may charge customers that pre-ordered that Digital Book before the price decrease the lower price.  Your Royalty will be based on the actual price we charge customers as a result of our Pre-order Price Guarantee, net of refunds, bad debt, and any VAT, sales or other taxes charged to a customer or applied with respect to sales to a customer.

Terms and Conditions for Kindle Vella

If you reside in the US, you may make your work available to Amazon customers in installments, each such installment, an "Episode" and a set of multiple Episodes, a "Story."

1. Content. Refer to our Kindle Vella Content Guidelines.

2. Tokens. In order to unlock your Episodes, Amazon customers will redeem Tokens purchased from Amazon. Amazon has sole and complete discretion to set the retail customer price at which Tokens are sold, and a purchase of Tokens is non-refundable except where required by law. We are solely responsible for processing payments, payment collection and related customer service with respect to Tokens.

3. Episode Word Count and Token Pricing. Each Episode must consist of a minimum of 600 words and a maximum of 5,000 words. The number of Tokens required to unlock each Episode will be set by Amazon, in its sole and complete discretion.

4. Royalties. If you are not in breach of your obligations under this Agreement, for each Token a customer redeems for your Episode, we will pay you the following Royalty: 50% of the amount the customer paid for that Token, net of refunds, bad debt, and any fees, VAT, sales or other taxes charged to a customer or applied with respect to sales or redemption of Tokens. You will not receive any Royalty for Episodes you or we make available for free. We will pay Royalties due approximately 60 days following the end of the calendar month during which your Episodes were unlocked. We will make available to you an online report detailing unlocked Episodes and corresponding Royalties.

5. Inapplicable Terms. Except to the extent modified above, all terms in this Agreement remain in full force as if references to "Digital Books" or "Books" were references to "Episodes" and Kindle Vella was expressly included in the definition of "Program." However, the following sections do not apply to Kindle Vella: 5.2.3 Lending Kindle Books, 5.3.1 Providing Your List Price, 5.3.2 Currency Conversion, 5.3.3 Multiple List Prices, 5.4.1 Royalties, 5.4.2. When We Pay You, 5.4.3 Payment Currencies, 5.4.4 Payment Terms for Brazilian Publishers, Terms and Conditions for KDP Select Program, Terms and Conditions for KDP Pre-Orders, the Digital Book Pricing Page and the Print Book Pricing Page.

Recent Changes to the Agreement

On the date listed at the top of this Agreement, we updated Sections 1, 2, 3 and 5.1, 5.2, 5.3, 5.4.3, 5.4.6, 5.4.8, and 10.3. We also updated Sections 2.2, 3 and 5 of the Terms and Conditions for KDP Select Program and Section 3 of the Terms and Conditions for KDP Pre-Orders. Please carefully review the revised Agreement in its entirety.

# EXHIBIT 3

# Advantage Membership Agreement

**Updated October 1, 2017**
This Agreement contains the terms and conditions that apply to an individual's or an entity's participation in the U.S. Amazon Advantage program ("Advantage").

## 1. General Terms
In this Agreement, "**we**", "**our**", "**us**", and "**Amazon.com**" mean Amazon Fulfillment Services, Inc., and its affiliates and "**you**" or "**your**" means you the applicant. "**Product**" means any product that you register to include in Advantage. In Advantage, we pay you for each unit of Product that you ship to us *after* it is sold to a customer. Your participation in Advantage is governed by this Membership Agreement, the Instructions and Rules and the terms, conditions, policies, guidelines, and other information on the Amazon.com website, each of which may be modified from time to time. In the event of any conflicts between any of this information, the terms of this Agreement control your participation.

## 2. Scope
Amazon.com may sell the Products through any online or physical point of presence through which it or its affiliates offer, advertise, or merchandise the Products. Currently, Advantage is limited to Products shipped to and from U.S. fulfillment centers.

## 3. Enrollment in the Program
In order to enroll in the Program, you must submit a complete Program application, available here, and identify at least one Product for inclusion in Advantage. We will evaluate your application and notify you via email of its acceptance or rejection (which is in our discretion).

## 4. Operating Requirements
Detailed requirements regarding ordering, inventory maintenance, shipping, returns and other aspects of the Program are contained in the Instructions and Rules. Failure to comply with any of the requirements may result in additional handling fees charged to your account, as explained in the Instructions and Rules.

## 5. Risk of Loss
The risk of loss for each Product will transfer to us only when we accept the Product. You will be solely responsible for any loss of or damage to Product units that occurs prior to such acceptance. Each accepted Product will be stored by us or on our behalf until we purchase the Product from you, we return the Product to you, we destroy or liquidate the Product (as described in Paragraph 6), or this Agreement is terminated. In the case of loss of or damage to your Products while stored by us or on our behalf, our liability will be limited to the price that we agreed to pay to you for such Products at the time of our order.

## 6. Rejection
We may reject any Product you send to us that is defective, damaged, overage (meaning that we did not order it from you), not properly registered with Advantage, lacking a bar code, or otherwise fails to meet the requirements specified in the Instructions and Rules. At our discretion, rejected Products will either be (a) returned to you at your expense, and you authorize us to charge your freight account for such returns or to withhold such shipping charge from payments due to you under this Program; **or**, (b) destroyed, liquidated or otherwise disposed of without compensation to you.

## 7. Customer Pricing

We will determine, at our sole discretion, the price at which we sell your Products to customers. However, you may choose whatever *suggested retail price* ("List Price") you like when you register a Product, provided that the List Price is (a) at or below the suggested retail price at which you offer or sell that Product via any other sales channel and (b) in any event does not exceed $999.99. You will have no security interest, lien or other claim in or to the proceeds that we receive from our sale of your Product(s).

## 8. Purchase and Payment

When we receive a valid customer order for a Product, we will purchase a unit of the Product from your Advantage inventory (except as provided in Paragraphs 6 and 9). For each unit we purchase from you, we will pay you the percentage, specified in the Instructions and Rules, of the  suggested retail price you chose when registering the Product. Legal title to each unit of Product automatically transfers to us at the time we purchase it from you. We pay for each unit purchased on a monthly basis, in arrears, in accordance with the Instructions and Rules. Reports on inventory and recent past sales are available online. We can also choose to purchase units of Product at any time, even if we have not received a customer order, by paying you the amount described above.

## 9. Customer Returns to Us

We retain ownership of Products that are returned by our customers, and we may store those Products in our company-owned inventory. We reserve the right to fulfill customer orders for Products from our inventory of returned Products before we purchase or order additional Products from you.

## 10. Our Returns to You

If we determine that there is insufficient customer demand for your Product, we may choose to no longer carry it. In such case, we will attempt to return all Products to you. You will pay all charges (including packaging, insurance, and freight) incurred to ship each unit from the fulfillment center to your location. If we have an outdated or incorrect return address for you, if your return address is outside of the United States, or if we cannot charge to your freight account, we will use commercially reasonable efforts to contact you regarding freight arrangements, but we may liquidate the Products and keep the proceeds, destroy the Products, or ship the Products to you and deduct the charges from any payments due to you through Advantage. Please see Paragraph 22 below for additional obligations with regards to returns from us to international addresses.

## 11. Limited License Grant to Descriptive Materials

You grant to Amazon.com a royalty-free, nonexclusive, worldwide, perpetual, irrevocable right and license to (a) use, reproduce, perform, display, distribute and prepare derivative works from the Descriptive Materials (defined below) and (b) sub-license the foregoing rights.

"Descriptive Materials" means all available information about each Product, including without limitation artwork and text for the packaging (including for example, cover, jacket, jacket flaps, spine and front and back matter); promotional photographs and descriptions, blurbs, author bios, Library of Congress information, title page information, tables of contents, indices, complete Product descriptions, reviews and any other materials concerning the Product. Aside from those portions of each Product identified in the preceding sentence, for the purposes of this Agreement, Descriptive Materials does not include the internal content contained in the Products, such as the text of a book or the recording or musical compositions contained within a CD.

## 12. License; Representation and Warranties

You represent and warrant to us that (a) you have full authority to grant the licenses and permission described in this Agreement; (b) you have valid legal title to all Products and all rights necessary to distribute the Products and to otherwise perform this Agreement; (c) your sale of Products to us, and our promotion, distribution, and resale of them, will not violate any contract by which you are bound or any applicable law or regulation; (d) you will deliver all Products to us in new, merchantable condition; and (e) the Products, and our promotion, distribution, and resale of them, will not violate or misappropriate any copyright, trademark or other intellectual property or other rights of any third party. At our option, and at your cost, you will replace or accept the return of any Product that does not comply with these representations and warranties.

## 13. Indemnification

You agree to indemnify, defend, and hold harmless Amazon.com, its affiliated companies, and their respective officers, directors, employees, and agents against any claim, loss, damage, judgment, settlement, cost, expense, or other liability (including, without limitation, attorneys' fees) arising from or related to (a) the Products; (b) your alleged breach of any representations or warranty contained in this Agreement; or (c) any content you provide (collectively, "Claims"). You will use counsel reasonably satisfactory to us to defend each Claim. If at any time we reasonably determine that any Claim might adversely affect us, we may take control of the defense at your reasonable expense and without affecting your indemnification and hold harmless obligations. You may not consent to the entry of any judgment or enter into any settlement without our prior written consent, which we will not unreasonably withhold.

## 14. Customer Practices

Customers who purchase Products are exclusive customers of Amazon.com. Accordingly, all of our rules, policies, and operating procedures concerning customer orders, customer service, pricing, and sales will apply to those customers. We may change our policies and operating procedures at any time in our sole discretion.

## 15. Confidentiality

During the course of your membership in Advantage, you may receive information relating to Amazon.com or Advantage that is not known to the general public ("Confidential Information"). Confidential Information includes, without limitation, information relating to sales consummated under Advantage. You agree that (a) all Confidential Information will remain Amazon.com's exclusive property; (b) you will use Confidential Information only as is reasonably necessary for your participation in Advantage; and (c) you will not disclose Confidential Information to any individual, company, or other third party.

## 16. Publicity

You may not issue any press release or make any public statement related to Advantage, or use the name, trademarks or logo in any way (including in promotional material) of Amazon.com or any of its affiliates without our advance written permission, or misrepresent or embellish the relationship between us in any way.

## 17. Revisions; Continued Use

We reserve the right to change any of the terms and conditions contained in this Agreement, including the Instructions and Rules, policies, guidelines, or other information on the site, at any time and in its

sole discretion. Any changes are upon posting a change notice or a new agreement on our website or in your account page. You are responsible for reviewing the new agreement and any applicable changes or notices. YOUR CONTINUED MEMBERSHIP IN ADVANTAGE AFTER THE POSTING OF ANY CHANGES CONSTITUTE YOUR ACCEPTANCE OF SUCH CHANGES. IF YOU DO NOT AGREE TO ANY CHANGES TO THIS AGREEMENT, YOU MUST TERMINATE THIS AGREEMENT IN ACCORDANCE WITH SECTION 18.

### 18. Term

a.  **Commencement.** The term of this Agreement begins when you receive your notice of acceptance into Advantage and ends when terminated by either party.

b.  **Termination by you.** You may terminate this Agreement at any time, with or without cause, by giving us written notice of such termination. Your termination is effective 30 days from the date we receive your written notice. You must continue to accept, confirm, and fulfill all orders that we send to you prior to the effective date of termination.

c.  **Termination by us.** We may terminate this Agreement at any time, with or without cause, by giving you written notice of such termination, which is effective immediately (or on a later date as specified in the notice).

d.  **Post-Termination disposition of copies.** Following any termination, Amazon.com will have the option to remove all Products in our possession via any method described in Paragraphs 8 or 10. Unless we terminate this Agreement without cause during the first six months of the term, all returns will be at your expense and subject to the provisions in Paragraph 10. All provisions that reasonably may be construed as surviving the expiration or termination of this Agreement will survive.

### 19. Relationship of Parties

You and Amazon.com are independent contractors, and nothing in this Agreement creates any partnership, joint venture, agency, franchise, sales representative, or employment relationship, or any kind of exclusive relationship, between the parties. We reserve the right to purchase items from other sources, even if they are similar or identical to your Products, and the right to fulfill customer orders from inventory purchased outside of Advantage, whether from you or from third parties.

### 20. Limitation of Liability; Disclaimers

We are not liable for indirect, special, or consequential damages or any loss of revenue, profits, or data arising in connection with this Agreement or Advantage, even if we have been advised of the possibility of such damages. Further, our aggregate liability arising with respect to this Agreement and Advantage will not exceed, at any time, the total amounts paid to you under Paragraph 8 of this Agreement during the previous 12-month period.

### 21. Disputes

Any dispute relating to this Agreement (including any actual or alleged breach here of), any transactions or activities under this Agreement or your relationship with us or any of our affiliates in which the aggregate total claim for relief sought on behalf of one or more parties exceeds $7,500 will be adjudicated in any state or federal court in King County, Washington, and you consent to exclusive jurisdiction and venue in such courts.

### 22. International Shipping Obligations

You are responsible for all customs clearance obligations for any Products you ship to Amazon.com from an international address or we return to you at an international address. These obligations include, but are not limited to, the payment of all customs duties, taxes and other charges, and the identification of

yourself as importer and exporter of record, as appropriate. Amazon must not be listed on any documentation as importer, exporter, or consignee. Amazon reserves the right to refuse to accept the shipments that do not comply with these requirements and any costs assessed against or incurred by Amazon as a result will be deducted from your bank account or amounts payable to you at Amazon's discretion.

### 23. Taxes
Any and all fees, expenses or reimbursements (collectively, "**Amounts**") payable by you pursuant to this Agreement are exclusive of all sales, use, inventory and other taxes, and must be paid to us without deduction or with holdings of any kind. All such taxes are your responsibility and for your account. If Amazon.com is required by law or by administration thereof to collect any such taxes from you, you will pay such taxes to Amazon.com.

If Amazon is required to withhold any taxes on payments made by us to you, Amazon has the right to withhold such taxes and pay them to the appropriate tax authority; provided however, that Amazon will deliver a receipt for any such taxes withheld or other such documents necessary to enable you to claim a tax credit or deduction for the taxes withheld. Payment to you as reduced by such with holdings will constitute full payment and settlement to you of such amounts.

You will be responsible for all other taxes (including interest and penalties) or fees arising from transactions and the documentation of transactions under Advantage.

### 14. Miscellaneous
a.  **Choice of Law.**  This Agreement is governed by the laws of the State of Washington, without reference to rules governing choice of laws or the Convention on Contracts for the International Sale of Goods.
b.  **Assignment.**  You may not assign this Agreement, by operation of law or otherwise, without our prior written consent. Subject to that restriction, this Agreement will be binding on, inure to, and be enforceable against the parties and their respective successors and assigns.
c.  **No Waiver.**  Our failure to enforce your strict performance of any provision of this Agreement will not constitute a waiver of our right to enforce such provision or any other provision of this Agreement subsequently.
d.  **Notices.**  We will send all notices and other communication to you at the e-mail address you listed in your Advantage application or, where applicable, via your Account Maintenance page. You must send all notices and other communication relating to Advantage to us by using the Contact Us form, available on any page in your Advantage account, or at www.amazon.com/advantage.
e.  **Severability.**  If any provision of this Participation Agreement shall be deemed unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from these terms and conditions and shall not affect the validity and enforceability of any remaining provisions.
f.  **Entire Agreement.**  This Agreement represents the entire agreement between the parties with respect to Advantage and supersedes any previous or contemporaneous oral or written agreements and understandings.

This Agreement only governs Amazon.com orders for Products that Amazon.com will sell through Advantage. If Amazon.com orders product from you outside of Advantage (as Amazon-owned inventory), those transactions will be governed by a separate agreement.

# EXHIBIT 4

This file contains both the U.S. Advantage Membership Agreement and the related U.S. Advantage Instructions and Rules, combined for convenience only.

# U.S. Advantage Membership Agreement

**Updated November 14th, 2022**

This U.S. Advantage Membership Agreement (this "**Membership Agreement**") contains the terms and conditions that apply to an individual's or an entity's participation in the United States ("**U.S.**") Amazon Advantage program ("**Advantage**").

**1.      General Terms.** In this Membership Agreement, "**we**", "**our**", "**us**", and "**Amazon**" mean Amazon.com Services LLC, and its affiliates and "**you**" and "**your**" mean you the applicant. "**Product**" means any product that you register to include in Advantage. In Advantage, we pay you for each unit of Product that you ship to us *after* it is sold to a customer. Your participation in Advantage is governed by this Membership Agreement, the U.S. Advantage Instructions and Rules (as updated from time to time, the "**Instructions and Rules**") and the terms, conditions, policies, guidelines, and other information Amazon makes available through the Amazon.com website, the Advantage vendor website or elsewhere, each of which may be modified from time to time (collectively, this "**Agreement**"). In the event of any conflicts between any of this information, the terms of this Membership Agreement control.

**2.      Scope.** Amazon may sell the Products through any online or physical point of presence through which it or its affiliates offer, advertise, or merchandise the Products. Currently, Advantage is limited to Products shipped to and from U.S. fulfillment centers.

**3.      Membership Fee.** You will pay a non-refundable annual membership fee of $99 for Advantage. The annual membership period begins on June 1 and ends on May 31 of the following year (such period, an "**Account Year**"). We will assess this fee in May prior to the start of each Account Year and automatically debit it from your account in June, provided that for the year in which you first establish your Advantage membership, we will prorate the fee and automatically debit it from your account. If your membership is canceled or terminated, or if this Agreement is otherwise terminated for any reason, you will not be entitled to any refund of the annual membership fee.

**4.      Operating Requirements.** Detailed requirements regarding ordering, inventory maintenance, shipping, returns and other aspects of Advantage are contained in the Instructions and Rules. Failure to comply with any of the requirements may result in additional handling fees charged to your account or other remedies, as explained in this Agreement.

**5.      Risk of Loss.** The risk of loss for each Product will transfer to us only when we accept the Product. You will be solely responsible for any loss of or damage to Product units that occurs prior to such acceptance. Each accepted Product will be stored by us or on our behalf until we purchase the Product from you, we return the Product to you, we liquidate or dispose of the Product (as described in Section 6), or this Agreement is terminated. In the case of loss of or damage to your Products while stored by us or on our behalf, our liability will be limited to the price that we agreed to pay to you for such Products at the time of our order.

**6.      Rejection.** We may reject any Product you send to us that is defective, damaged, not of the quantity or type we ordered, or otherwise constituting overage, not properly registered with Advantage,

lacking a bar code, or that otherwise fails to meet the requirements specified in the Instructions and Rules. At our discretion, rejected Products will either be (a) returned to you at your expense, and you authorize us to charge your freight account for such returns or to withhold such shipping charge from payments due to you under Advantage; **or**, (b) liquidated or otherwise disposed of without compensation to you.

**7.      Customer Pricing.** We will determine, in our sole discretion, the price at which we sell your Products to customers. However, you may choose whatever *suggested retail price* ("**List Price**") you like when you register a Product, provided that the List Price is more than $2.99 and does not exceed $999.99. You will have no security interest, lien or other claim in or to any proceeds we receive from our sale of your Product(s).

**8.      Purchase and Payment.** When we receive a valid customer order for a Product, we will purchase a unit of the Product from your Advantage inventory (except as provided in Sections 6 and 9). For each unit we purchase from you, we will pay you 45% of the List Price you provided when registering the Product (i.e., we will apply a purchase discount of 55%). If we decide to reduce the sales price to the customer below the List Price, the customer discount will not be deducted from your payment.

Legal title to each unit of Product automatically transfers to us at the time we purchase it from you. We pay for each unit purchased on a monthly basis, in arrears, with payment issued at the end of each month for units sold in the previous month. For example, if a unit of your Product sells any time during the month of January, we will issue payment for that unit by the last day of February. All payments are made in U.S. dollars and via Electronic Funds Transfer ("**EFT**") to the U.S. bank account you provide upon account set up. If you are unable to accept EFT payments, we will pay you by check. We charge a processing fee of $15.00 per check and will issue checks only if the amount payable is at least $100.00. If you need to be paid by check, we will accrue and withhold payments until the total amount due is at least $100.00. Payments are made automatically and without the need for invoices. Reports on inventory and recent past sales are available online. We can also choose to purchase units of Product at any time, even if we have not received a customer order, by paying you the amount described in this Section 8.

**9.      Customer Returns to Us.** Products that are returned by our customers may be stored in our own inventory for future fulfillment to customers, returned to your Advantage inventory, or returned to you at our discretion. If you have not provided us with a valid U.S. return address we may also exercise any additional rights specified in Section 10 or in the Instructions and Rules with respect to returned Products. We reserve the right to fulfill customer orders for Products from our inventory of returned Products before we purchase or order additional Products from you. If we elect to return Product to your Advantage inventory or directly to you, you will reimburse us the full amount of any payment that you received when we purchased the Product. We may deduct any reimbursement amounts from your account or amounts payable to you, at our discretion.

**10.      Our Returns to You.** We may choose to no longer carry your Products in our discretion. In such case, we will attempt to return all Products to you. You will pay all charges (including packaging, insurance, and freight) incurred to ship each unit from the fulfillment center to your location. If we have an outdated or incorrect return address for you, if your return address is outside of the U.S., or if we cannot charge to your freight account, we will use commercially reasonable efforts to email you (using an email address then-registered for your Advantage account) regarding freight arrangements, but we may liquidate the Products and keep the proceeds, dispose of the Products, or ship the Products to you and deduct the

charges from any payments due to you through Advantage. Please see Sections 2 and 22 with regard to returns from us to international addresses.

**11.       Limited License Grant to Descriptive Materials.** You grant to Amazon a royalty-free, nonexclusive, worldwide, perpetual, irrevocable right and license to (a) use, reproduce, perform, display, distribute and prepare derivative works from the Descriptive Materials (defined below) and (b) sub-license the foregoing rights.

"**Descriptive Materials**" means all available information about each Product, including without limitation artwork and text for the packaging (including for example, cover, jacket, jacket flaps, spine and front and back matter); promotional photographs and descriptions, blurbs, author bios, Library of Congress information, title page information, tables of contents, indices, complete Product descriptions, reviews and any other materials concerning the Product. Aside from those portions of each Product identified in the preceding sentence, for the purposes of this Agreement, Descriptive Materials does not include the internal content contained in the Products, such as the text of a book or the recording or musical compositions contained within a CD.

**12.       License; Representation and Warranties; etc.** You represent and warrant to us that (a) the information provided in your application is true and correct, (b) you have full authority to grant the licenses and permissions described in this Agreement; (c) you have valid legal title to all Products and all rights necessary to distribute the Products and to otherwise perform this Agreement; (d) your sale of Products to us, and our promotion, distribution, and resale of them, will not violate any contract by which you are bound or any applicable law or regulation; (e) you will deliver all Products to us in new, merchantable condition; and (f) the Products, and our promotion, distribution, and resale of them, will not violate or misappropriate any copyright, trademark or other intellectual property or other rights of any third party. At our option, and at your cost, you will replace or accept the return of any Product that does not comply with these representations and warranties. If we determine in our sole discretion that deceptive, fraudulent, or illegal activity has occurred with respect to your Products or your Advantage account or that you have attempted to manipulate our services, we may permanently withhold payments to you, and we may offset any payments previously paid against future payments or require you to remit them to us. We will use these funds to offset the costs of Amazon's enforcement efforts and/or to compensate third parties harmed by deceptive, fraudulent, or illegal conduct.

**13.       Indemnification.** You agree to indemnify, defend, and hold harmless Amazon, its affiliated companies, and their respective officers, directors, employees, and agents against any claim, loss, damage, judgment, settlement, cost, expense, or other liability (including, but not limited to, attorneys' fees) arising from or related to (a) the Products; (b) your alleged breach of any representations or warranty contained in this Agreement; or (c) any content you provide (collectively, "**Claims**"). You will use counsel reasonably satisfactory to us to defend each Claim. If at any time we reasonably determine that any Claim might adversely affect us, we may take control of the defense at your reasonable expense and without affecting your indemnification and hold harmless obligations. You may not consent to the entry of any judgment or enter into any settlement without our prior written consent, which we will not unreasonably withhold.

**14.       Customer Practices.** Customers who purchase Products are exclusive customers of Amazon. Accordingly, all of our rules, policies, and operating procedures concerning customer orders, customer

U.S. Advantage Membership Agreement
Updated: November 14th, 2022

service, pricing, and sales will apply to those customers. We may change our policies and operating procedures at any time in our sole discretion.

**15.    Confidentiality.** During the course of your membership in Advantage, you may receive information relating to Amazon or Advantage that is not known to the general public ("**Confidential Information**"). Confidential Information includes, but is not limited to, information relating to sales consummated under Advantage. You agree that (a) all Confidential Information will remain Amazon's exclusive property; (b) you will use Confidential Information only as is reasonably necessary for your participation in Advantage; and (c) you will not disclose Confidential Information to any individual, company, or other third party.

**16.    Publicity.** You may not issue any press release or make any public statement related to Advantage, or use the name, trademarks or logo in any way (including in promotional material) of Amazon or any of its affiliates without our advance written permission, or misrepresent or embellish the relationship between us in any way.

**17.    Revisions; Continued Use.** We may change any of the terms and conditions contained in this Agreement, including the Instructions and Rules, terms, conditions, policies, guidelines, or other information Amazon makes available through the Amazon.com website, the Advantage vendor website or elsewhere, at any time and in our sole discretion. Any changes are effective upon posting a change notice or a new agreement on our website or in your account page. You are responsible for reviewing the new agreement and any applicable changes or notices. YOUR CONTINUED MEMBERSHIP IN ADVANTAGE AFTER THE POSTING OF ANY CHANGES CONSTITUTE YOUR ACCEPTANCE OF SUCH CHANGES. IF YOU DO NOT AGREE TO ANY CHANGES TO THIS AGREEMENT, YOU MUST TERMINATE THIS AGREEMENT IN ACCORDANCE WITH SECTION 18.

**18.    Term.**

**a.    Commencement.** The term of this Agreement begins when you receive your notice of acceptance into Advantage and ends when terminated by either party.

**b.    Termination by you.** You may terminate this Agreement at any time, with or without cause, by giving us written notice of such termination. Your termination is effective 30 days from the date we receive your written notice. You must continue to accept, confirm, and fulfill all orders that we send to you prior to the effective date of termination.

**c.    Termination by us.** We may terminate this Agreement at any time, with or without cause, by giving you written notice of such termination, which is effective immediately (or on a later date as specified in the notice).

**d.    Post-Termination Disposition of Copies.** Following any termination, Amazon will have the option to remove all Products in our possession via any method described in Section 8 or 10. All returns will be at your expense and subject to the provisions in Section 10. The following provisions of this Membership Agreement will survive termination of this Agreement: Sections 5, 6, 9, 10, 11, 12, 13, 15, 16, 18, 20, 21, 22, 23, 24.

**19.    Relationship of Parties.** You and Amazon are independent contractors, and nothing in this Agreement creates any partnership, joint venture, agency, franchise, sales representative, or employment relationship, or any kind of exclusive relationship, between the parties. We reserve the right to purchase items from other sources, even if they are similar or identical to your Products, and the right to fulfill customer orders from inventory purchased outside of Advantage, whether from you or from third parties.

**20.    Limitation of Liability; Disclaimers.** We are not liable for indirect, special, or consequential damages or any loss of revenue, profits, or data arising in connection with this Agreement or Advantage, even if we have been advised of the possibility of such damages. Further, our aggregate liability arising with respect to this Agreement and Advantage will not exceed, at any time, the total amounts paid to you under Section 8 of this Membership Agreement during the previous 12-month period.

**21.    Disputes.** Any dispute or claim relating in any way to this Agreement or Advantage will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify. The U.S. Federal Arbitration Act and federal arbitration law apply to this Agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051, U.S.A. The arbitration will be conducted by the American Arbitration Association ("**AAA**") under its Commercial Arbitration Rules. Payment of all filing, administration and arbitrator fees will be governed by the AAA's Commercial Fee Schedule. You and we each agree that the underlying award in arbitration may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules. The AAA's rules and fee schedules are available at [www.adr.org](http://www.adr.org) or by calling 1-800-778-7879. You and we each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration you and we each waive any right to a jury trial, and you and we agree that any such suit may proceed only in state or Federal court in King County, Washington.

**22.    International Shipping Obligations.** You are responsible for all costs and other obligations associated with shipments that Amazon receives from, or ships to you at, an international address, including but not limited to all customs duties, taxes and other charges, as well as the identification of yourself as importer and exporter of record, as appropriate.

Amazon must not be listed on any documentation as importer, exporter, or consignee. The delivery term when shipping items internationally must be Delivery Duty Paid to the destination, which will be the Amazon fulfillment center to which you are required to send your Products. Amazon reserves the right to refuse to accept the shipments that do not comply with these requirements and any costs assessed against or incurred by Amazon as a result will be deducted from your bank account or amounts payable to you at Amazon's discretion.

**23.    Taxes.** Any and all fees, expenses or reimbursements (collectively, "**Amounts**") payable by you pursuant to this Agreement are exclusive of all sales, use, inventory and other taxes, and must be paid to us without deduction or with holdings of any kind. All such taxes are your responsibility and for your

account. If Amazon is required by law or by administration thereof to collect any such taxes from you, you will pay such taxes to Amazon.

If Amazon is required to withhold any taxes on payments made by us to you, Amazon has the right to withhold such taxes and pay them to the appropriate tax authority; provided however, that Amazon will deliver a receipt for any such taxes withheld or other such documents necessary to enable you to claim a tax credit or deduction for the taxes withheld. Payment to you as reduced by such with holdings will constitute full payment and settlement to you of such amounts.

You will be responsible for all other taxes (including interest and penalties) or fees arising from transactions and the documentation of transactions under Advantage.

**24. Miscellaneous.**

**a.      Governing Law.** The United States Federal Arbitration Act, applicable United States federal law and the laws of the state of Washington, U.S.A., without regard to principles of conflict of laws, will govern this Agreement and any dispute of any sort that might arise between you and Amazon relating to this Agreement or Advantage.

**b.      Assignment.** You may not assign this Agreement, by operation of law or otherwise, without our prior written consent. Subject to that restriction, this Agreement will be binding on, inure to, and be enforceable against the parties and their respective successors and assigns.

**c.      No Waiver.** Our failure to enforce your strict performance of any provision of this Agreement will not constitute a waiver of our right to enforce such provision or any other provision of this Agreement subsequently.

**d.      Notices.** We will send all notices and other communication to you at the e-mail address you listed in your application or, where applicable, via the applicable section of your Advantage account (which, as of the date of this Membership Agreement, is the Account Maintenance page). You must send all notices and other communication relating to Advantage to us by using the Contact Us form, available on any page in your Advantage account, or at advantage.amazon.com.

**e.      Severability.** If any provision of this Agreement shall be deemed unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from these terms and conditions and shall not affect the validity and enforceability of any remaining provisions.

**f.      Entire Agreement.** This Agreement represents the entire agreement between the parties with respect to Advantage and supersedes any previous or contemporaneous oral or written agreements and understandings.

This Agreement only governs Amazon orders for Products that Amazon will sell through Advantage. If Amazon orders product from you outside of Advantage (as Amazon-owned inventory), those transactions will be governed by a separate agreement.

# U.S. Advantage Instructions and Rules

**Updated November 14th, 2022**

This document contains Instructions and Rules that apply to an individual's or an entity's participation in the U.S. Amazon Advantage program ("**Advantage**"), and which form a part of the U.S. Advantage Membership Agreement (as updated from time to time, the "**Membership Agreement**"). Terms used but not defined in these Instructions and Rules have the meanings given in the Membership Agreement.

## 1.   Eligibility

**1.1.** To enroll in Advantage, you must have an e-mail account, internet access, a valid U.S. return address, and North American distribution rights to any product you wish to enroll for sale (a "Title") in Advantage.

**1.2.** As part of the enrollment process, you must identify one or more Titles that you would like to include in Advantage. You may identify additional Titles at any time during your membership in Advantage. We will evaluate each Title and will notify you of its acceptance or rejection. We may reject any Title in our sole discretion, including on the basis that it does not meet any requirements contained in the Agreement. Each Title must also satisfy Amazon suitability standards. These standards currently relate to quality, value, subject matter, production standards, and compliance with intellectual property laws. In no event will we accept any Title that we decide in our sole discretion to be pornographic. Used products are not eligible for Advantage.

**1.3.** You must have at least one actively enrolled Title in order to remain eligible for Advantage.

## 2.   Account Onboarding and Ordering of Titles

**2.1.** After we have approved your application, we will send you an email with instructions on how to complete the onboarding process. We recommend you complete the required onboarding steps within 2 weeks, as the signup link included in this email may expire.

**2.2.** Your Advantage account is not considered fully active until you have successfully enrolled at least one Title.

**2.3.** Once you have successfully enrolled at least one Title, we may send you an initial order e-mail containing instructions on how to log in as a member and access the "Orders" tab of the Vendor account website to confirm your orders.

**2.4.** Confirm your order, get shipping instructions, and send copies of your Title to the designated fulfillment center.

**2.5.** To confirm your order, log in as a member and click on the "Orders" tab. Click on the Order ID to confirm your order and get your shipping instructions. Confirm your Order and then

print out the Shipping Label and Packing Slip. Send copies to the address on the Shipping Label. Include the Packing Slip in the box with the items you are shipping.

**2.6.** Items and/or shipments that do not comply with the Agreement may be assessed a handling fee, returned to you at your expense, and/or subject to any other treatment as more particularly specified in the Agreement.

**2.7.** If you do not have a collect freight agreement with us, you are responsible to prepay and bear all costs incurred to ship orders to our fulfillment center (including, for example, costs of freight and transit insurance). Freight charges must be marked prepaid as we will not accept shipments sent Cash on Delivery (COD).

## 3. Item-Level Packaging and Labeling Requirements

**3.1.** General Item-Level Packaging and Labeling Requirements:

**3.1.1.** Each item must have a valid product identification number (UPC, ISBN, EAN), as detailed in the Title-Specific Packaging and Labeling Requirements below, that is barcoded as well as printed numerically on an easily visible and scannable part of the exterior of the item or its point of sale packaging. If the item is shrink-wrapped or in a protective case, the bar code must be scannable without removing that material. The scannable bar code's ISBN/UPC/EAN on the item must match the ISBN/UPC/EAN entered on your Advantage application.

**3.1.2.** Any separate items that together comprise one SKU (i.e. Sets) must be packaged as a single unit.

**3.1.3.** Items must be free of all unauthorized marketing materials including pamphlets, price tags, display materials or other non-Amazon stickers.

**3.1.4.** Items must be packaged sufficiently to protect the contents during shipment to the customer. Vendors shipping items that may require unusual handling or care must notify the vendor services team prior to shipping.

**3.2.** Title-Specific Packaging and Labeling Requirements:

**3.2.1.** Book Titles (e.g., books (including audiobook CDs and books on CD-ROM), calendars, card sets, diaries, journals, maps, pamphlets, sheet music, single-issue magazines): The product must have an ISBN or EAN that is printed on the Title and a scannable bar code printed on the back of the Title. The bar code must scan to match the ISBN or EAN on the Title, and the ISBN or EAN on the Title must match the ISBN or EAN on the application. Allowable binding or product types listed with ISBNs or EANs include: Books, Maps, Audio CDs, Calendars, Pamphlets, Sheet Music, CD-ROMs, Diaries (or Journals), and Single-Issue Magazines. Single sheets of paper are NOT eligible for enrollment in Advantage.

**3.2.2.** Music Titles (e.g., cassettes, CDs, vinyl albums):

**3.2.2.1.** The title and artist name must be printed on and readable from the spine.

**3.2.2.2.** A scannable barcoded UPC must be on the outside of the package with the UPC bar code clearly visible through the wrapping.

**3.2.2.3.** The Title must be shrink-wrapped in a protective case, such as a plastic jewel case for CDs or a cardboard sleeve for vinyl. CDs in paper or plastic sleeves are not accepted.

**3.2.2.4.** The bar code must scan to match the UPC on the Title, and the UPC on the Title must match the UPC on the application.

**3.2.3.** Video Titles (e.g., Blu-ray Discs, DVDs, VHS tapes):

**3.2.3.1.** The title must be printed on and readable from the spine.

**3.2.3.2.** The Title must be shrink-wrapped with a scannable barcoded UPC on the outside of the package with the UPC bar code clearly visible through the wrapping.

**3.2.3.3.** The bar code must scan to match the UPC on the Title, and the UPC on the Title must match the UPC on the application.

## 4. Carton-Level Packaging and Labeling Requirements

**4.1.** Carton-Level Packaging Requirements:

**4.1.1.** Each carton must contain items associated with no more than five (5) Order IDs.

**4.1.2.** Cartons must sufficiently protect contents, including the protection of point of sale packaging, during transit and receipt (for example: RSC, B flute, ECT-32, 200BH).

**4.1.3.** Cartons may not exceed 50 lbs. unless one single shippable unit exceeds 50 lbs. itself. Cartons containing a single item over 50 lbs. must be clearly labeled "Heavy Weight" on the top and sides.

**4.1.4.** Unacceptable forms of dunnage include crinkle wrap, shredded paper and peanuts of any kind.

**4.1.5.** Acceptable forms of dunnage include foam, air pillows and full sheets of paper.

**4.1.6.** No pallet sized cartons or point of sale packaging may be used as cartons.

**4.2.** Carton-Level Labeling Requirements:

**4.2.1.** Each carton must arrive with a shipping label either printed on it or affixed to it, in a location and condition that is easily visible and scannable.

**4.2.2.** You must use the Printable Shipping Label available for printing after you confirm each order OR, if you are unable to use the Printable Shipping Label, mark each carton clearly with the following information:

**4.2.2.1.** Order ID (list of all Order IDs with which contents are associated).

**4.2.2.2.** To: Amazon.com.

**4.2.2.3.** Attn: (customer name if other than Amazon).

**4.2.2.4.** Address of the Fulfillment Center, for example:

Amazon.com.kydc, Inc.

INVENTORY
1850 Mercer Drive
Lexington, KY 40511.

**4.2.2.5.** From: (Your Company's Name).

**4.2.2.6.** Carton# (#_____ of total #_____).

**4.2.2.7.** For cartons that contain only one item ID (UPC/EAN/ISBN) also include:

    **5.7.2.7.1.** Product ID# (UPC/EAN/ISBN, or another)

    **5.7.2.7.2** Quantity (number of units contained)

**4.2.3.** If it is impossible to put all the Order IDs (up to 5 per carton is acceptable) on the carton label, the label should indicate "Multiple Order IDs" (with no Order IDs listed) and a carton-level packing slip that has all Order ID information for the container must be included.

**4.2.4.** Cartons that contain mixed SKUs or partial cartons must be clearly labeled as such.

**4.2.5.** Separate items packaged together, that are intended to be sold together as a single set, must be clearly labeled with "Sold as Set" to prevent pieces of the set from being separated. The set must also have a single, unmistakable bar code that identifies the entire set. Bar codes on individual component pieces of the sets must not be visible.

## 5. Replenishment

When inventory of any of your Titles gets low, Amazon may send you an e-mail requesting more copies of any such Title. Please check that the ISBN or UPC on the items you are shipping matches the ISBN or UPC listed in the order, and that the scannable bar code still matches the ISBN or UPC on your Title. If a new edition is available for your Title, the new edition cannot be substituted for the previous edition. If for any reason you cannot fill this or future orders for an ISBN or UPC (e.g., because it is out of stock, temporarily or permanently out of print), you must suspend the Title in your Advantage account. To change an item status, click the "Update Item Status" link in the Items tab. Failure to notify us of a change in status may result in suspension of your Amazon Advantage Title(s) and/or your account.

## 6. Proof of Delivery

Amazon will not issue reimbursement for packages or items lost in transit to our fulfillment center. Reimbursement for lost packages or items can only be issued if: (1) an ASN was submitted within 30 minutes of the carrier taking possession of the shipment or six hours prior to delivery to a fulfillment center, whichever is sooner, and (2) proof of delivery is available to indicate the item was in fact accepted by our fulfillment center. Proof of delivery for any packages or items you send to our fulfillment center must include all of the following information: (1) shipper's tracking ID number, (2) date and time of delivery, (3) location of delivery, (4) weight of the package upon shipment, (5) name of Amazon receiver. Compensation for partially received shipments requires

proof of the item's weight at the time of arrival at our fulfillment center. We strongly recommend choosing a shipping method that is traceable and/or insuring your parcel with your shipper.

**7.    Member Help**

    **7.1.** Additional help and information for members can be found on the Advantage vendor website.

        **7.1.1.**   Log into your account and click on "Support" to access the Advantage Help & Information Center and to learn about adding new Titles and Title information, how to confirm an Order and manage your shipments, etc.

    **7.2.** You may contact the Advantage Vendor Services team at any time with questions regarding your account.

        **7.2.1.**   The best way to contact the Advantage Vendor Services team is to log into your Advantage account, click on "Support" and then use the "Contact Us" feature. We strive to answer all inquiries within 24 hours.

# EXHIBIT 5

# Updated Advantage membership agreement, instructions, and rules

We've updated the Advantage membership agreement and related instructions and rules.

You can find an updated copy of the membership agreement and instructions and rules in the Legal section of the Resource Center.

We are updating the Advantage membership agreement and related instructions and rules.

In this update, we've changed the dispute resolution mechanism to arbitration, and reorganized some sections of the agreement and the instructions and rules for clarity.

Your continued membership in Advantage after the posting of these changes constitutes your acceptance of the changes. If you do not agree to any of the updates made to the agreement, you can terminate the agreement by closing your Advantage account, in accordance with section 18 of the agreement.

The updates will be enforced starting on December 14. You can find updated copies (in English only, at this time) of the membership agreement and instructions and rules documents in the Legal section of the Resource Center.

# EXHIBIT 2

# Consumer Arbitration Rules



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014

# Table of Contents

Introduction ................................................................ 6

  About the AAA. ........................................................ 6

  The Arbitrator ......................................................... 7

  The AAA's Consumer Arbitration Rules ................................. 7

  Availability of Mediation through AAA Mediation.org .................... 7

  Administrative Fees ................................................... 7

  Arbitrator's Fees .................................................... 8

  Notification ......................................................... 8

Filing a Case and Initial AAA Administrative Steps ......................... 9

  R-1. Applicability (When the AAA Applies These Rules) ................. 9

  R-2. Starting Arbitration under an Arbitration Agreement in a Contract ... 11

  R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause ..... 13

  R-4. AAA Administrative Fees ......................................... 13

  R-5. Neutral Arbitrator's Compensation ............................... 14

  R-6. Depositing Neutral Arbitrator's Compensation with the AAA ........ 14

  R-7. Expenses ........................................................ 14

  R-8. Changes of Claim ................................................ 14

  R-9. Small Claims Option for the Parties .............................. 15

  R-10. Administrative Conference with the AAA .......................... 15

  R-11. Fixing of Locale (the city, county, state, territory and or country where the arbitration will take place). ....................... 15

  R-12. Business Notification and Publicly-Accessible Consumer Clause Registry ....... 16

  R-13. AAA and Delegation of Duties. .................................. 17

  R-14. Jurisdiction ................................................... 17

Appointing the Arbitrator ................................................. 18

  R-15. National Roster of Arbitrators. ................................. 18

  R-16. Appointment from National Roster ................................ 18

  R-17. Number of Arbitrators ........................................... 18

  R-18. Disclosure ..................................................... 18

  R-19. Disqualification of Arbitrator .................................. 19

  R-20. Vacancies ...................................................... 19

Pre-Hearing Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-21. Preliminary Management Hearing with the Arbitrator . . . . . . . . . . . . . . . . . . . . . 20

R-22. Exchange of Information between the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-23. Enforcement Powers of the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-24. Written Motions (except for Dispositive Motions—see R-33) . . . . . . . . . . . . . . . . 21

R-25. Representation of a Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-27. Written Record of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-28. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-29. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-30. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-31. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-32. Conduct of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration). . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-38. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-39. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . 26

Conclusion of the Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-40. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-41. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-42. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-43. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-44. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-45. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-46. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors . . . . . . 29

Post Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   R-48. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   R-49. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

General Procedural Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   R-50. Waiver of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   R-51. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   R-52. Serving of Notice and AAA and Arbitrator Communications . . . . . . . . . . . . . . . . . . . 31

   R-53. Interpretation and Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

   R-54. Remedies for Nonpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

   R-55. Declining or Ceasing Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Costs of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Procedures for the Resolution of Disputes through Document Submission . . . . . 33

   D-1. Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   D-2. Preliminary Management Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   D-3. Removal from the Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   D-4. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Glossary of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   ADR Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   ADR Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   ADR Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   Arbitration Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

   Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

   Case Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

   Claimant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

   Demand for Arbitration (also referred to as "Demand") . . . . . . . . . . . . . . . . . . . . . . . 36

   Documents-Only Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   Independent ADR Institution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   In-Person Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   Neutral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Opposing Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Respondent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Telephone Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# Consumer Arbitration Rules



## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The American Arbitration Association® ("AAA®," "the Association") applies the *Consumer Arbitration Rules* ("Rules") to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA has the discretion to apply or not to apply the *Consumer Arbitration Rule,* and the parties are able to bring any disputes concerning the application or non-application of the Rules to the attention of the arbitrator. Consumers and businesses are permitted to seek relief in a small claims court for disputes or claims within the scope of the small claims court's jurisdiction. These Rules were drafted and designed to be consistent with the minimum due process principles of the *Consumer Due Process Protocol.*

## About the AAA

The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration. As administrator, however, the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings. The administrator will comply with any court orders issued from litigation involving the parties to the dispute.

The American Arbitration Association, founded in 1926, is a neutral, independent, and private not-for-profit organization. We offer a broad range of conflict management services to businesses, organizations, and individuals. We also provide education, training, and publications focused on methods for settling disputes out of court.

## The Arbitrator

Except where the parties to a case reach their own settlement, the arbitrator will make the final, binding decision called the Award on the dispute and render it in writing. The Arbitrator makes all the procedural decisions on a case not made by the Administrator or not decided jointly by the parties. The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the case.

Arbitrators are neutral and independent decision makers who are not employees of the AAA. Once appointed to a case, an arbitrator may not be removed by one party without the other party's consent or unless the Administrator determines an arbitrator should be removed and replaced by another arbitrator chosen by the Administrator in a manner described in these Rules.

## The AAA's Consumer Arbitration Rules

The AAA has developed the *Consumer Arbitration Rules* for consumers and businesses that want to have their disagreements resolved through arbitration.

## Availability of Mediation through AAA Mediation.org

Mediation in consumer disputes is also available to help parties resolve their disputes. Parties interested in participating in mediation may find a mediator through **www.aaamediation.org.**

## Administrative Fees

The Association charges a fee for its services under these Rules. A fee schedule is included at the end of these Rules in the Costs of Arbitration section.

## Arbitrator's Fees

Arbitrators are paid for the time they spend resolving disputes. The business makes deposits as outlined in the fee schedule in the Costs of Arbitration section of these Rules. Unused deposits are refunded at the end of the case.

## Notification

A business intending to incorporate these Rules or to refer to the dispute resolution services of the AAA in a consumer alternative dispute resolution ("ADR") plan should, at least 30 days prior to the planned effective date of the program,

- notify the Association of its intention to do so, and
- provide the Association with a copy of the consumer dispute resolution plan.

If a business does not comply with this requirement, the Association reserves the right to withhold its administrative services. For more information, please see R-12 below.

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)** The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

**1)** have specified that these *Consumer Arbitration Rules* shall apply;

**2)** have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the Consumer Arbitration Rules;

**3)** the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

**4)** the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules.*

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

- Credit card agreements
- Telecommunications (cell phone, ISP, cable TV) agreements
- Leases (residential, automobile)
- Automobile and manufactured home purchase contracts
- Finance agreements (car loans, mortgages, bank accounts)
- Home inspection contracts
- Pest control services

- Moving and storage contracts

- Warranties (home, automobile, product)

- Legal funding

- Health and fitness club membership agreements

- Travel services

- Insurance policies

- Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

- Home construction and remodeling contracts

- Real estate purchase and sale agreements

- Condominium or homeowner association by-laws

- Business insurance policies (including crop insurance)

- Commercial loan and lease agreements

- Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules.* The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol.* Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer*

*Arbitration Rules.* If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

## R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

**(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

- Briefly explain the dispute

- List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

- Specify the amount of money in dispute, if applicable

- Identify the requested location for the hearing if an in-person hearing is requested

- State what the claimant wants

**(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

**(3)** If the arbitration is pursuant to a court order, the claimant must send one copy of the Demand to the AAA at the same time the Demand is sent to the respondent. When sending a demand to the AAA, the claimant must also send the following:

- A copy of the court order

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee

The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

The claimant may file by mail. The mailing address of the AAA's Case Filing Services is:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Or, the claimant may file online using AAA WebFile: **https://www.adr.org**

Or, the claimant may file at any of the AAA's offices.

**(b)** The AAA will send a written notice letting the consumer and the business know the Demand for Arbitration has been received.

**(c)** The respondent may submit a written response to the Demand, known as an "answer," which describes how the respondent responds to the claimant's claim. The answer must be sent to the AAA within 14 calendar days after the date the AAA notifies the parties that the Demand for Arbitration was received and all filing requirements were met. The answer must be

- in writing,

- sent to the AAA, and

- sent to the claimant at the same time.

**(d)** The respondent may also file a counterclaim, which is the respondent filing a Demand against the claimant. If the respondent has a counterclaim, the counterclaim must briefly explain the dispute, specify the amount of money involved, and state what the respondent wants.

**(e)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed.

**(f)** When sending a Demand or an answer, the consumer and the business are encouraged to provide enough details to make the dispute clear to the arbitrator.

## R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause

If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute. To start the arbitration, the parties must send the AAA a submission agreement, which is an agreement to arbitrate their case with the AAA, signed by the consumer and the business (email communications between all parties to a dispute reflecting an agreement to arbitrate also is acceptable). The submission agreement must

- be in writing (electronic communication is acceptable);
- be signed by both parties;
- briefly explain the dispute;
- list the names and addresses of the consumer and the business;
- specify the amount of money involved;
- specify the requested location for the hearing if an in-person hearing is requested; and
- state the solution sought.

The parties should send one copy of the submission agreement to the AAA. They must also send the proper filing fees. A fee schedule can be found in the Costs of Arbitration section at the end of these Rules.

## R-4. AAA Administrative Fees

As a not-for-profit organization, the AAA charges fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the case is filed shall apply for all fees charged during the administration of the case. The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees.

AAA fees shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-5. Neutral Arbitrator's Compensation

**(a)** Arbitrators serving under these Rules shall be compensated at a rate established by the AAA.

**(b)** Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**(c)** Arbitrator compensation shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-6. Depositing Neutral Arbitrator's Compensation with the AAA

The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case.

## R-7. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-8. Changes of Claim

Once a Demand has been filed, any new claims or counterclaims, or changes to the claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answering statement with the AAA.

If an arbitrator has already been appointed, a new or different claim or counterclaim may only be considered if the arbitrator allows it.

## R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

**(a)** The parties may take their claims to small claims court without first filing with the AAA.

**(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

**(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

## R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

## R-11. Fixing of Locale (the city, county, state, territory and or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol.*

## R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1. notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.

2. provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to that clause is only an administrative determination by the AAA and cannot be

relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/ClauseRegistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/ClauseRegistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

## R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

## R-14. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## Appointing the Arbitrator

### R-15. National Roster of Arbitrators

The AAA maintains a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators from this National Roster to resolve the parties' dispute(s).

### R-16. Appointment from National Roster

**(a)** If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

**(b)** If the parties' arbitration agreement provides for three or more arbitrators and they have not appointed the arbitrators and have not agreed to a process for appointing the arbitrators, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint the arbitrators from the National Roster. The AAA will appoint the chairperson.

**(c)** Arbitrator(s) serving under these Rules will be neutral and must meet the standards of R-19 with respect to being impartial and independent.

### R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator.

### R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, must provide information to the AAA of any circumstances likely to raise justifiable doubt as to whether the arbitrator can remain impartial or independent. This disclosure of information would include

    **(1)** any bias;

    **(2)** any financial interest in the result of the arbitration;

    **(3)** any personal interest in the result of the arbitration; or

    **(4)** any past or present relationship with the parties or their representatives.

Such obligation to provide disclosure information remains in effect throughout the arbitration. A failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-50.

**(b)** If the AAA receives such information from the arbitrator or another source, the AAA will communicate the information to the parties. If the AAA decides it is appropriate, it will also communicate the information to the arbitrator and others.

**(c)** In order to encourage disclosure by arbitrators, disclosing such information does not mean that the arbitrator considers the disclosed information will likely affect his or her ability to be impartial or independent.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties carefully and in good faith. The AAA may disqualify an arbitrator who shows

    **(1)** partiality or lack of independence;

    **(2)** inability or refusal to perform his or her duties with diligence and in good faith; or

    **(3)** any grounds for disqualification provided by applicable law.

**(b)** If a party objects to the continued service of an arbitrator, or if the AAA should so decide to raise the issue of whether the arbitrator should continue on the case, the AAA will decide if the arbitrator should be disqualified.  After gathering the opinions of the parties, the AAA will decide and that decision shall be final and conclusive.

## R-20. Vacancies

If for any reason an arbitrator cannot or is unwilling to perform the duties of the office, the AAA may declare the office vacant. Any vacancies shall be filled based on the original procedures used to appoint the arbitrator. If a substitute arbitrator is appointed, the substitute arbitrator will decide if it is necessary to repeat all or part of any prior ruling or hearing.

# Pre-Hearing Preparation

## R-21. Preliminary Management Hearing with the Arbitrator

**(a)** If any party asks for, or if the AAA or the arbitrator decides to hold one, the arbitrator will schedule a preliminary management hearing with the parties and/or their representatives as soon as possible. The preliminary management hearing will be conducted by telephone unless the arbitrator decides an in-person preliminary management hearing is necessary.

**(b)** During the preliminary management hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of issues and claims, scheduling of the hearings, and any other preliminary matters.

**(c)** The arbitrator shall promptly issue written orders that state the arbitrator's decisions made during or as a result of the preliminary management hearing. The arbitrator may also conduct additional preliminary management hearings if the need arises.

## R-22. Exchange of Information between the Parties

**(a)** If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

  **1)** specific documents and other information to be shared between the consumer and business, and

  **2)** that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

**(b)** Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

**(c)** No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

**(d)** The arbitrator has authority to resolve any disputes between the parties about exchanging information.

## R-23. Enforcement Powers of the Arbitrator

The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to:

**(a)** an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality;

**(b)** to the extent the exchange of information takes place pursuant to R-22, imposing reasonable search limitations for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically-stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders that the arbitrator is empowered to issue under applicable law.

## R-24. Written Motions (except for Dispositive Motions—see R-33)

The arbitrator may consider a party's request to file a written motion (except for Dispositive Motions— see R-33) only after the parties and the arbitrator conduct a conference call to attempt to resolve the issue that gives rise to the proposed motion. Only after the parties and the arbitrator hold the call may the arbitrator consider a party's request to file a written motion. The arbitrator has the sole discretion to allow or deny the filing of a written motion and his or her decision is final.

## R-25. Representation of a Party

Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, unless such choice is prohibited by applicable law. A party intending to be represented shall give the opposing party and the AAA the name, address, and contact information of the representative at least three business days before the hearing where that representative will first appear in the case. It will be considered proper notice if a representative files the arbitration demand or answer or responds for a party during the course of the arbitration.

While parties do not need an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney.

## R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator will set the date, time, and place for each hearing within the locale as determined in R-11. A hearing may be by telephone or in person. For their part, the parties commit to

**(1)** respond promptly to the arbitrator when he or she asks what dates the parties
are available to have the hearings;

**(2)** cooperate in the scheduling of the hearing on the earliest possible date; and

**(3)** follow the hearing schedule set up by the arbitrator.

The AAA will send a notice of the hearing to the parties at least 10 days before the hearing date, unless the parties agree to a different time frame.

## R-27. Written Record of Hearing

**(a)** If a party wants a written record of the hearing, that party must make such arrangement directly with a stenographer (court reporter) and notify the opposing parties, the AAA, and the arbitrator of these arrangements at least three business days before the hearing. The party or parties who request the written record shall pay the cost of the service.

**(b)** No other type of recording will be allowed unless the parties agree or the arbitrator directs a different form of recording.

**(c)** The arbitrator may resolve disputes between the parties over who will pay the costs of the written record or other type of recording.

**(d)** The parties can agree or the arbitrator may decide that the transcript (written record) is the official record of the hearing. If it is the official record of the hearing, the transcript must be given to the arbitrator and made available to all the parties so that it can be reviewed. The date, time, and place of the inspection will be decided by the arbitrator.

## R-28. Interpreters

If a party wants an interpreter present for any part of the process, that party must make arrangements directly with the interpreter and shall pay for the costs of the service.

## R-29. Documents-Only Procedure

Disputes may be resolved by submission of documents and without in-person or telephonic hearings. For cases being decided by the submission of documents only, the *Procedures for the Resolution of Disputes through Document Submission* (found at the end of these Rules) shall supplement these Rules. These Procedures will apply where no disclosed claims or counterclaims exceed $25,000 (see R-1(g)), unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.

## Hearing Procedures

### R-30. Attendance at Hearings

The arbitrator and the AAA will keep information about the arbitration private except to the extent that a law provides that such information shall be shared or made public. The parties and their representatives in the arbitration are entitled to attend the hearings. The arbitrator will determine any disputes over whether a non-party may attend the hearing.

### R-31. Oaths

Before starting the hearing, each arbitrator may take an oath of office and, if required by law, shall do so. If the arbitrator determines that witnesses shall testify under oath, then the arbitrator will direct the oath be given by a duly-qualified person.

### R-32. Conduct of Proceedings

**(a)** The claimant must present evidence to support its claim. The respondent must then present evidence to support its defense. Witnesses for each party also must answer questions from the arbitrator and the opposing party. The arbitrator may change this procedure, as long as each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** When the arbitrator decides it is appropriate, the arbitrator may also allow the parties to present evidence in alternative ways, including web conferencing, Internet communication, and telephonic conferences. All procedures must provide the parties with a full and equal opportunity to present any evidence that the arbitrator decides is material and relevant to deciding the dispute. If the alternative ways to present evidence involve witnesses, those ways may include that the witness submit to direct and cross-examination questioning.

**(c)** The arbitrator will use his or her discretion to resolve the dispute as quickly as possible and may direct the parties to present the evidence in a certain order, or may split the proceedings into multiple parts and direct the parties in the presentation of evidence.

**(d)** The hearing generally will not exceed one day. However, if a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial day of hearing.

**(e)** The parties may agree in writing to waive oral hearings.

## R-33. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## R-34. Evidence

**(a)** The parties may offer relevant and material evidence and must produce any evidence the arbitrator decides is necessary to understand and decide the dispute. Following the legal rules of evidence shall not be necessary. All evidence should be taken in the presence of the arbitrator and all of the parties, unless any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case. The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant.

**(c)** The arbitrator shall consider applicable principles of legal privilege, such as those that involve the confidentiality of communications between a lawyer and a client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so on the request of any party or on the arbitrator's own determination. If a party requests the arbitrator sign a subpoena, that party shall copy the request to the other parties in the arbitration at the same time it is provided to the arbitrator.

## R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence

**(a)** The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate. The arbitrator will consider any objection to such evidence made by the opposing party.

**(b)** If the parties agree or the arbitrator decides that documents or other evidence need to be submitted to the arbitrator after the hearing, those documents or other evidence will be filed with the AAA so that they can be sent to the arbitrator. All parties will be given the opportunity to review and respond to these documents or other evidence.

## R-36. Inspection or Investigation

An arbitrator finding it necessary to inspect property or conduct an investigation in connection with the arbitration will request that the AAA inform the parties. The arbitrator will set the date and time of the inspection and investigation, and the AAA will notify the parties. Any party who would like to be present at the

inspection or investigation may attend. If one or all parties are not present at the inspection or investigation, the arbitrator will make an oral or written report to the parties and allow them an opportunity to comment.

## R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)

**(a)** The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.

**(c)** When making a decision on an interim measure, the arbitrator may grant any remedy, relief, or outcome that the parties could have received in court.

**(d)** A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

## R-38. Postponements

The arbitrator may postpone any hearing

**(a)** if requested by a party, and the party shows good cause for the postponement;

**(b)** if all parties agree to a postponement;

**(c)** on his or her own decision.

## R-39. Arbitration in the Absence of a Party or Representative

The arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator. An award cannot be made only because of the default of a party. The arbitrator shall require the party who participates in the hearing to submit the evidence needed by the arbitrator to make an award.

## Conclusion of the Hearing

### R-40. Closing of Hearing

The arbitrator must specifically ask all parties whether they have any further proofs to offer or witnesses to be heard. When the arbitrator receives negative replies or he or she is satisfied that the record is complete, the arbitrator will declare the hearing closed.

If briefs or other written documentation are to be filed by the parties, the hearing shall be declared closed as of the final date set by the arbitrator. Absent agreement of the parties, the time that the arbitrator has to make the award begins upon the closing of the hearing. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-41. Reopening of Hearing

If a party requests, or if the arbitrator decides to do so, the hearing may be reopened at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. If the arbitrator reopens the hearing, he or she shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-42. Time of Award

The award shall be issued promptly by the arbitrator and, unless the parties agree differently or the law indicates a different time frame, no later than 30 calendar days from the date the hearing is closed, or, if the case is a documents-only procedure, 14 calendar days from the date the arbitrator set for his or her receipt of the final statements and proofs. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-43. Form of Award

**(a)** Any award shall be in writing and executed in the form and manner required by law.

**(b)** The award shall provide the concise written reasons for the decision unless the parties all agree otherwise. Any disagreements over the form of the award shall be decided by the arbitrator.

**(c)** The AAA may choose to publish an award rendered under these Rules; however, the names of the parties and witnesses will be removed from awards that are published, unless a party agrees in writing to have its name included in the award.

### R-44. Scope of Award

**(a)** The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

**(c)** The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

**(d)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

### R-45. Award upon Settlement

If the parties settle their dispute at any point during the arbitration and at the parties' request, the arbitrator may lay out the terms of the settlement in a "consent award" (an award drafted and signed by the arbitrator that reflects the settlement terms of the parties). A consent award must include a division of the arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses. Consent awards will not be made available to the public per Rule 43(c) unless the parties agree otherwise.

### R-46. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

## R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors

**(a)** Within 20 days after the award is transmitted, any party, upon notice to the opposing parties, may contact the AAA and request that the arbitrator correct any clerical, typographical, or mathematical errors in the award. The arbitrator has no power to re-determine the merits of any claim already decided.

**(b)** The opposing parties shall be given 10 days to respond to the request. The arbitrator shall make a decision on the request within 20 days after the AAA transmits the request and any responses to the arbitrator.

**(c)** If applicable law provides a different procedural time frame, that procedure shall be followed.

# Post Hearing

## R-48. Release of Documents for Judicial Proceedings

The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, except for records determined by the AAA to be privileged or confidential. The party will have to pay a fee for this service.

## R-49. Applications to Court and Exclusion of Liability

**(a)** No court or judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or any AAA employee as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA, and AAA employees are not competent to and may not testify as witnesses in any such proceeding.

## General Procedural Rules

### R-50. Waiver of Rules

If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed.

### R-51. Extensions of Time

The parties may agree to change any period of time provided for in the Rules, except that any such modification that negatively affects the efficient resolution of the dispute is subject to review and approval by the arbitrator. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### R-52. Serving of Notice and AAA and Arbitrator Communications

**(a)** Any papers or notices necessary for the initiation or continuation of an arbitration under these Rules, or for the entry of judgment on any award made under these Rules, may be served on a party by mail or email addressed to the party or its representative at the last-known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator, and the parties also may use overnight delivery, electronic facsimile transmission (fax), or electronic mail (email) to give the notices required by these Rules. Where all parties and the arbitrator agree, notices may be sent by other methods of communication.

**(c)** Unless directed differently by the AAA or by the arbitrator, any documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration.

**(d)** A failure to provide the other parties with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained within those communications.

**(e)** A party and/or someone acting on behalf of a party cannot have any communications with an arbitrator or a potential arbitrator about the arbitration outside of the presence of the opposing party. All such communications shall be conducted through the AAA.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or its representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

### R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA.

### R-54. Remedies for Nonpayment

**(a)** If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment.

**(b)** Once the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment.

Such measures may include limiting a party's ability to assert or pursue its claim. However, a party shall never be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for relief with the opportunity to respond prior to making any determination. In the event that the arbitrator grants any request for relief that limits any party's participation in the arbitration, the arbitrator will require the party who is making a claim and who has made appropriate payments to submit the evidence required to make an award.

**(c)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(d)** If arbitrator compensation or AAA administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator. The impact of the termination for nonpayment of the Consumer Clause Registry fee is the removal from the "Registered" section of the Registry.

### R-55. Declining or Ceasing Arbitration

The AAA in its sole discretion may decline to accept a Demand for Arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator, or a party or party's representative.

## Costs of Arbitration

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT *www.adr.org/consumerfeeschedule*.

## Procedures for the Resolution of Disputes through Document Submission

### D-1. Applicability

**(a)** In any case, regardless of claim size, the parties may agree to waive in-person/telephonic hearings and resolve the dispute through submission of documents to one arbitrator. Such agreement should be confirmed in writing no later than the deadline for the filing of an answer.

**(b)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by these Procedures, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**(c)** If one party makes a request to use the Procedures for the Resolution of Disputes through Document Submission (Procedures) and the opposing party is unresponsive, the arbitrator shall have the power to determine whether to proceed under the Procedures. If both parties seek to use the Procedures after the appointment of an arbitrator, the arbitrator must also consent to the process.

**(d)** When parties agree to these Procedures, the procedures in Sections D-1 through D-4 of these Rules shall supplement other portions of these rules which are not in conflict with the Procedures.

### D-2. Preliminary Management Hearing

Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator shall convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

### D-3. Removal from the Procedures

**(a)** The arbitrator has the discretion to remove the case from the Procedures if the arbitrator determines that an in-person or telephonic hearing is necessary.

**(b)** If the parties agree to in-person or telephonic hearings after a previous agreement to proceed under the Procedures, the arbitrator shall conduct such hearings. If a party seeks to have in-person or telephonic hearings after agreeing to the

Procedures, but there is not agreement among the parties to proceed with in-person or telephonic hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

## D-4. Time of Award

**(a)** The arbitrator shall establish the date for either final written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing, and the time for the rendering of the award shall commence on that day as well.

**(b)** The arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(c)** The award is subject to all other provisions of these Rules that pertain to awards.

## Glossary of Terms

### Administrator

The Administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, to make preliminary decisions about where hearings might take place, and to handle the fees associated with the arbitration. As Administrator, however, the Administrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the Administrator's role is only administrative, the Administrator cannot overrule or change an arbitrator's decisions or rulings. The Administrator will comply with any court orders issued from litigation involving the parties to the dispute.

### ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute other than by court litigation. Mediation and Arbitration are the most widely used ADR processes.

### ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award and the court's review of arbitration awards is limited.

## Arbitration Agreement

An arbitration agreement is a contract between parties to settle their disputes by binding arbitration. It is typically found in the parties' contract in a section entitled "Arbitration" or "Dispute Resolution." It gives the parties information about how they are choosing to settle any disputes that they might have.

## Arbitrator

Arbitrators are neutral and independent decision makers who are not employees of the administrator. Except where the parties to a case reach their own settlement, the Arbitrator will make the final, binding decision on the dispute and render it in writing, called the Award. The Arbitrator makes all the procedural decisions on a case not made by the administrator or not decided jointly by the parties. The Arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

Once appointed to a case, an Arbitrator may not be removed by one party without the other party's consent or unless the administrator determines an Arbitrator should be removed and replaced by another Arbitrator chosen by the administrator in a manner described in these Rules.

## Case Administrator

The Case Administrator is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Administrator is the parties' contact point for almost all aspects of the case outside of any hearings.

## Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

## Demand for Arbitration (also referred to as "Demand")

The written document created by the claimant that informs the respondent that it wishes to arbitrate a dispute. This document provides basic information about

the dispute, the parties involved and what the claimant wants as a result of the arbitration.

## Documents-Only Arbitration

In a Documents-Only Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No in-person or telephone hearing is held.

## Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

## In-Person Hearing

During an In-Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In-Person Hearing is not as formal as going to court.

## Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

## Neutral

A "Neutral" is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

## Party

The party is the person(s) or business that is involved in the dispute in the arbitration process. Usually, these are the people or businesses that have an arbitration agreement between them that specifies that a dispute should be resolved by arbitration.

## Parties

Parties are all the separate individuals, businesses, or organizations involved in the arbitration.

## Opposing Party

The opposing party is the other party that is on the opposite side of the arbitration from you. If you are the claimant, the Opposing Party is the respondent. If you are the respondent, the Opposing Party is the claimant. If you are the consumer, the Opposing Party is the business. If you are the business, the Opposing Party is the consumer.

## Respondent

The respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

## Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. They also present their evidence to the arbitrator during the call. Often this is done after the parties have sent in documents for the arbitrator to review.

© 2023 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.



# EXHIBIT 3



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



Available online at **adr.org/commercial**

Rules Amended and Effective September 1, 2022

# Regional Vice Presidents

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
Matthew Conger, Esq.
Vice President
Phone: 202.223.8590
Email: CongerM@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
Svetlana Gitman, Esq.
Vice President
Phone: 773.820.7801
Email: GitmanS@adr.org

**States: Alaska, California, Oregon, Washington**
Aaron Gothelf, Esq.
Vice President
Phone: 415.671.4053
Email: GothelfA@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida, Puerto Rico**
Angela Romero Valedon
Vice President
Phone: 305.358.7777
Email: RomeroA@adr.org

**States: Arizona, Colorado, Kansas, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Rhode Island, Vermont**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

# Case Management

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, PR, SC, TN, VA**

Sandra Marshall
Vice President
Phone: 559.490.1906
Email: MarshallS@adr.org
**Administers cases in: AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

Rod Toben
Vice President
Phone: 972.774.6923
Email: TobenR@adr.org
**Administers Cases in: AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

R-1. Agreement of Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

R-2. AAA, Delegation of Duties, Conduct of Parties, Administrative Review Council . .  11

R-3. National Roster of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

R-4. Filing Requirements and Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

R-8. Consolidation and Joinder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

R-9. Interpretation and Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

R-10. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

R-11. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

R-12. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

R-13. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

R-14. Direct Appointment by Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

R-15. Appointment of Chairperson by Party-Appointed Arbitrators, Parties, or
the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

R-16. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

R-17. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

R-18. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

R-19. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

R-20. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

R-21. Vacancies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

R-22. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

R-23. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . . . . . . .  22

R-24. Enforcement Powers of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

R-25. Date, Time, Place, and Method of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

R-26. Attendance at Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-27. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-28. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-29. Official Record of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-30. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-31. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-32. Arbitration in the Absence of a Party or Representative  . . . . . . . . . . . . . . . . . . . . . . 25

R-33. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-34. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-35. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-36. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-37. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-38. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-39. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-40. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-41. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-42. Waiver of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-43. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-44. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-45. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-46. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-47. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-48. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-49. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-50. Award Upon Settlement – Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-51. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-52. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-53. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-54. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-55. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-56. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-57. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-58. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

R-59. Remedies for Nonpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

R-60. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Preliminary Hearing Procedures** ................................................ 36

    P-1. General ...................................................................... 36

    P-2. Checklist .................................................................... 36

**Expedited Procedures** ......................................................... 39

    E-1. Limitation on Extensions.................................................. 39

    E-2. Changes of Claim or Counterclaim ....................................... 39

    E-3. Serving of Notice ......................................................... 39

    E-4. Appointment and Qualifications of Arbitrator ............................ 39

    E-5. Discovery, Motions, and Conduct of Proceedings ........................ 40

    E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission ..................................................... 40

    E-7. Date, Time, Place, and Method of Hearing ............................... 41

    E-8. The Hearing .............................................................. 41

    E-9. Time of Award ........................................................... 41

    E-10. Arbitrator's Compensation.............................................. 41

**Procedures for Large, Complex Commercial Disputes**.......................... 42

    L-1. Administrative Conference................................................ 42

    L-2. Arbitrators ............................................................... 42

    L-3. Management of Proceedings ............................................. 43

**Administrative Fee Schedules (Standard and Flexible Fees)** .................... 43

**Commercial Mediation Procedures**........................................... 44

    M-1. Agreement of Parties .................................................... 44

    M-2. Initiation of Mediation .................................................. 44

    M-3. Representation........................................................... 44

    M-4. Appointment of the Mediator ........................................... 45

    M-5. Mediator's Impartiality and Duty to Disclose ........................... 45

    M-6. Vacancies ............................................................... 46

    M-7. Duties and Responsibilities of the Mediator............................. 46

    M-8. Responsibilities of the Parties .......................................... 47

    M-9. Privacy.................................................................. 47

    M-10. Confidentiality ......................................................... 47

    M-11. No Stenographic Record ................................................ 48

    M-12. Termination of Mediation .............................................. 48

    M-13. Exclusion of Liability................................................... 48

M-14. Interpretation and Application of Procedures ................................ 48

M-15. Deposits ............................................................... 48

M-16. Expenses .............................................................. 48

M-17. Cost of the Mediation ................................................. 49

# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)



## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at **www.adr.org.**

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $100,000, the Rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in reaching a

settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $1,000,000 exclusive of claimed interest, arbitration fees and costs. The key features of these Procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference or other electronic means;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

# Commercial Arbitration Rules

## R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These Rules and any amendment to them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these Rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties agree or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $100,000, exclusive of interest, attorneys' fees, and arbitration fees and costs. Parties may also agree to use these Procedures in larger cases. Unless the parties agree otherwise, these Procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Procedures E-1 through E-10, in addition to any other portion of these Rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $1,000,000, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $1,000,000 or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Procedures L-1 through L-3 in addition to any other portion of these Rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures; the Procedures for Large, Complex Commercial Disputes; or the Procedures for the Resolution of Disputes Through Document Submission (Procedure E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Rules R-1 through R-60 of these Rules.

* *The AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements. A dispute arising out of an employment plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures. A dispute arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules.*

* *Beginning June 1, 2021, the AAA will apply the Consumer Arbitration Fee Schedule to any dispute between an online marketplace or platform and an individual user or subscriber (using or subscribed to the service as an individual and not incorporated) and the dispute does not involve work or work-related claims.*

## R-2. AAA, Delegation of Duties, Conduct of Parties, Administrative Review Council

**(a)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration.

**(b)** The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The AAA requires that parties and their representatives conduct themselves in accordance with the AAA's *Standards of Conduct for Parties and Representatives* when utilizing the AAA's services. Failure to do so may result in the AAA's declining to further administer a particular case or caseload.

**(d)** For cases proceeding under the Procedures for Large, Complex Commercial Disputes, and for other cases where the AAA, in its sole discretion, deems it appropriate, the AAA may act through its Administrative Review Council to take the following administrative actions:

   **i)** determine challenges to the appointment or continuing service of an arbitrator;

   **ii)** make an initial determination as to the locale of the arbitration, subject to the power of the arbitrator to make a final determination; or

   **iii)** decide whether a party has met the administrative requirements to file an arbitration under these Rules.

## R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these Rules. The term "arbitrator" in these Rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

## R-4. Filing Requirements and Procedures

**(a)** Filing Requirements

   **i)** Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration. The filing fee must be paid before a matter is considered properly filed.

**ii)** Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

    **a)** The filing party shall include a copy of the court order.

    **b)** The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

    **c)** The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to Rule R-33.

**iii)** Parties to any existing dispute who have not previously agreed to use these Rules may commence an arbitration under these Rules by filing a written Submission Agreement and the administrative filing fee. To the extent that the parties' Submission Agreement contains any variances from these Rules, such variances should be clearly stated in the Submission Agreement.

**iv)** Information to be included with any arbitration filing includes:

    **a)** the name of each party;

    **b)** the address of each party and, if known, the telephone number and email address;

    **c)** if applicable, the name, address, telephone number, and email address of any known representative for each party;

    **d)** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

    **e)** the locale requested if the arbitration agreement does not specify one.

**(b)** Filing Procedures

**i)** The initiating party may file or submit a dispute to the AAA in the following manner:

    **a)** through AAA WebFile®, located at **www.adr.org;**

    **b)** by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing; or

    **c)** by emailing the complete Demand or Submission to **casefiling@adr.org,** with payment to follow as directed by the AAA.

**ii)** The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

   **iii)** Any papers, notices, or process necessary or proper for the initiation of an arbitration under this Rule may be served on a party:

      **a)** by mail addressed to the party or its authorized representative at their last known address;

      **b)** by electronic service/email, with the prior agreement of the party being served;

      **c)** by personal service; or

      **d)** by any other service methods provided for under the applicable procedures of the courts of the state where the party to be served is located.

   **iv)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

   **v)** It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised with the arbitrator for determination.

   **vi)** The AAA has the authority to make an administrative determination whether the filing requirements set forth in this Rule have been met.

   **vii)** If the filing does not satisfy the filing requirements set forth in Section (a) above, the AAA shall acknowledge to all named parties receipt of the incomplete filing, and the filing may be returned to the initiating party.

**(c)** *Authority of arbitrator.* Any decision made by the AAA regarding filing requirements and procedures shall not interfere with the arbitrator's authority to determine jurisdiction pursuant to Rule R-7.

## R-5. Answers and Counterclaims

**(a)** A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the

amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of filing.  The claimant may file an answering statement or reply in response to the counterclaim with the AAA within 14 calendar days after notice of the filing of the counterclaim is sent by the AAA.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by any earlier date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in the administrative fee, the balance of the fee is due before the change of claim or counterclaim amount may be accepted by the arbitrator.  After the arbitrator is appointed, however, a party may increase the amount of its claim or counterclaim, or alter its request for non-monetary relief, only with the arbitrator's consent.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent.

**(c)** A party that filed a claim or counterclaim of an undisclosed or undetermined amount must specify the amount of the claim or counterclaim to the AAA, all parties, and the arbitrator at least seven calendar days prior to the commencement of the hearing or by any other date established by the arbitrator. If the disclosed amount of the claim or counterclaim results in an increased filing fee, that fee must be paid at the time the claim or counterclaim amount is disclosed. For good cause shown and with the consent of the arbitrator, a party may proceed to the hearing with an undisclosed or undetermined claim or counterclaim, provided that the final amount of the claim or counterclaim is set forth in a post-hearing brief or submission and any appropriate filing fee is paid.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## R-8. Consolidation and Joinder

**(a)** Consolidation

   **i)** Two or more arbitrations may be consolidated if all parties to all of the arbitrations to be consolidated so agree.

   **ii)** Unless all parties agree to consolidation, the party requesting consolidation of two or more arbitrations must file with the AAA and serve on all other parties a written request for consolidation with the supporting reasons for such request within 90 days of the date the AAA determines that all administrative filing requirements were satisfied for the last-filed case that is part of the consolidation request. Such time limit may be extended by the arbitrator appointed in the first-filed case upon a showing of good cause for the late request. The other parties to the arbitrations shall provide their written responses to the consolidation request within 10 calendar days after the AAA sends notice of receipt of the request.

   **iii)** At its discretion, the AAA either may direct that the consolidation request be decided by the arbitrator appointed in the first-filed case or may appoint a consolidation arbitrator for the sole purpose of deciding the consolidation request.

   **iv)** The arbitrator deciding consolidation may order consolidation of two or more cases for all purposes or for such limited purposes and under such conditions as the arbitrator may direct.

   **v)** Absent agreement of all parties, an arbitrator appointed for the sole purpose of deciding the consolidation request shall have no further power to act, and shall be removed from the case, after the consolidation request is decided.

   **vi)** In deciding whether to consolidate, the arbitrator or consolidation arbitrator shall take into account all relevant circumstances, including:

      **a)** the terms and compatibility of the agreements to arbitrate,

      **b)** applicable law,

      **c)** the timeliness of the request to consolidate and the progress already made in the arbitrations,

      **d)** whether the arbitrations raise common issues of law and/or fact, and

e) whether consolidation of the arbitrations would serve the interests of justice and efficiency.

**(b)** Joinder

i) Additional parties may be joined to an arbitration if all parties to the arbitration and the parties proposed to be joined so agree.

ii) Absent such consent, all requests for joinder must be submitted to the AAA prior to the appointment of an arbitrator pursuant to these Rules or within 90 days of the date the AAA determines that all administrative filing requirements have been satisfied. The arbitrator may extend this deadline on a showing of good cause for the late request.

iii) If the existing parties and the parties proposed to be joined are unable to agree to the joinder of those additional parties to an ongoing arbitration, the arbitrator shall decide whether parties should be joined. If an arbitrator has not yet been appointed in the case, the AAA may appoint an arbitrator for the sole purpose of deciding the joinder request. Absent agreement of all parties, the arbitrator appointed for the sole purpose of deciding the joinder request shall have no further power to act, and shall be removed from the case, after the joinder request is decided.

iv) The party requesting the joinder of one or more parties to a pending arbitration must file with the AAA a written request that provides the names and contact information for such parties; the names and contact information for the parties' representatives, if known; and the supporting reasons for such request, including applicable law. The requesting party must provide a copy of the joinder request to all parties in the arbitration and all parties it seeks to join at the same time it files the request with the AAA. The other parties to the arbitration and the parties sought to be joined shall provide their written responses to the joinder request within 14 days after the AAA sends notice of receipt of the request for joinder.

v) The requesting party shall comply with the provisions of Rule R-4(a) as to all parties sought to be joined.

**(c)** If an arbitrator determines that separate arbitrations shall be consolidated or that the joinder of additional parties is permissible, that arbitrator may also determine:

i) whether any arbitrator previously appointed to an existing case that was consolidated shall remain on the newly constituted case;

ii) whether any arbitrator previously appointed to a case where additional parties have been joined shall remain;

iii) if appropriate, a process for selecting the arbitrator(s) to fill any vacancies; and

iv) unless agreed otherwise by the parties, the allocation among the parties of arbitrator compensation and expenses, subject to reapportionment by the arbitrator appointed to the ongoing or newly constituted case in the final award.

**(d)** The AAA may take reasonable administrative actions to accomplish any consolidation or joinder ordered by the arbitrator or as agreed to by the parties. Pending the determination on a consolidation or joinder request, the AAA shall have the authority to stay the arbitration or arbitrations impacted by the consolidation or joinder request, at its sole discretion.

## R-9. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

## R-10. Mediation

In all cases where a claim or counterclaim exceeds $100,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally }opt out of this Rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this Rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

## R-11. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person, by videoconference or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

## R-12. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator that

applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days after the AAA sends notice of the filing of the Demand or by the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

**(a)** When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA shall initially determine the locale of arbitration, subject to the power of the arbitrator after appointment to make a final determination on the locale.

**(b)** If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

**(c)** If the parties' arbitration agreement specifies more than one possible locale, the filing party may select any of the specified locales at the time of filing, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

## R-13. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

**(a)** The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**(b)** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. At its discretion, the AAA may limit the number of strikes permitted. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if

for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

## R-14. Direct Appointment by Party

**(a)** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. If a party selects an arbitrator for appointment, it shall file the name, address, telephone number, and email address of the arbitrator with the AAA. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**(b)** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Rule R-19 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Rule R-19(b) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

**(c)** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**(d)** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 14 calendar days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## R-15. Appointment of Chairperson by Party-Appointed Arbitrators, Parties, or the AAA

**(a)** Where there is a panel of three or more arbitrators, one arbitrator will be designated as the panel chairperson. Such designation will be according to the terms of the parties' arbitration agreement. However, if the parties' arbitration agreement does not specify how the chairperson is to be selected, the chairperson can be designated, at the AAA's discretion, by the party-appointed arbitrators, the parties, the panel, or the AAA.

**(b)** If the arbitration agreement specifies a period of time for appointment of the chairperson and no appointment is made within that period or any agreed extension, the AAA may appoint the chairperson. If no period of time is specified for appointment of the chairperson, and the party-appointed arbitrators or the parties do not make the appointment within 14 calendar days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**(c)** Absent the agreement of the parties, the chairperson shall be appointed from the National Roster, and the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Rule R-13, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Rule.

## R-16. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these Rules.

## R-17. Number of Arbitrators

**(a)** The parties may agree on the number of arbitrators to hear and determine the case. If the arbitration agreement does not specify the number of arbitrators or is ambiguous, and the parties do not otherwise agree, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

**(b)** Use of terms such as "the arbitrator", "an arbitrator", or "the arbitrators" in the arbitration agreement, without further specifying the number of arbitrators, shall not be deemed by the AAA to reflect an agreement as to the number of arbitrators.

**(c)** Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the Rule R-6-required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make that determination.

## R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this Rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-42.

**(b)** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**(c)** Disclosure of information pursuant to this Rule R-18 is not an indication that the arbitrator considers the disclosed circumstance likely to affect impartiality or independence.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   **i)** partiality or lack of independence,

   **ii)** inability or refusal to perform his or her duties with diligence and in good faith, and

   **iii)** any grounds for disqualification provided by applicable law.

**(b)** The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Rule R-14 shall be non-neutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified on the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## R-20. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Rule R-14 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Rule R-20(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Rule R-19(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Rule R-19(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Rule R-20(a) should nonetheless apply prospectively.

**(c)** As set forth in Rule R-44, unless otherwise instructed by the AAA, in the Rules, or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## R-21. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these Rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-22. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person, by video conference or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Procedures P-1 and P-2 of these Rules address the issues to be considered at the preliminary hearing.

## R-23. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

  **i)** require the parties to exchange documents in their possession or custody on which they intend to rely;

  **ii)** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

  **iii)** require the parties, in response to reasonable document requests, to make available to the other party documents in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, and reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

iv) require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them.

## R-24. Enforcement Powers of Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of Rules R-22 and R-23 and any other rule or procedure and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:

(a) conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality;

(b) imposing reasonable search parameters for electronic and other documents if the parties are unable to agree;

(c) allocating costs of producing documentation, including electronically stored documentation;

(d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

(e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law.

## R-25. Date, Time, Place, and Method of Hearing

The arbitrator shall set the date, time, place, and method (including video, audio or other electronic means when appropriate) for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties.

## R-26. Attendance at Hearing

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

## R-27. Representation

Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, unless such choice is prohibited by applicable law. A party intending to be so represented shall notify the other party and the AAA of the name, telephone number and address, and email address if available, of the representative at least seven calendar days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

## R-28. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## R-29. Official Record of Proceedings

**(a)** Any party desiring a transcribed record of a hearing shall make arrangements directly with a transcriber or transcription service and shall notify the arbitrator and the other parties of these arrangements at least seven calendar days in advance of the hearing. The requesting party or parties shall pay the cost of the record.

**(b)** No other means of recording any proceeding will be permitted absent the agreement of the parties or per the direction of the arbitrator.

**(c)** If the transcript or any other recording is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties at the direction of the arbitrator.

**(d)** The arbitrator may resolve any disputes with regard to apportionment of the costs of the transcription or other recording.

## R-30. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## R-31. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

## R-32. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

## R-33. Conduct of Proceedings

**(a)** The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

**(c)** The arbitrator may also allow for some or all of the presentation of evidence by alternative means including video, audio or other electronic means other than an in-person presentation. Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.

**(d)** The parties may agree to waive oral hearings in any case and may also agree to utilize the *Procedures for Resolution of Disputes Through Document Submission*, found in Procedure E-6.

## R-34. Dispositive Motions

**(a)** The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines the moving party has shown that the motion is likely to succeed and to dispose of or narrow the issues in the case.

**(b)** Consistent with the goal of achieving an efficient and economical resolution of the dispute, the arbitrator shall consider the time and cost associated with the briefing of a dispositive motion in deciding whether to allow any such motion.

**(c)** Fees, expenses, and compensation associated with a motion or an application to make a motion may be assessed as provided for in Rule R-49(c).

## R-35. Evidence

**(a)** The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

**(c)** The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-36. Evidence by Written Statements and Post-Hearing Filing of Documents or Other Evidence

**(a)** At a date agreed upon by the parties or ordered by the arbitrator, the parties shall give written notice for any witness or expert witness who has provided a written witness statement to appear in person at the arbitration hearing for examination. If such notice is given, and the witness fails to appear, the arbitrator may disregard the written witness statement and/or expert report of the witness or make such other order as the arbitrator may consider to be just and reasonable.

**(b)** If a witness whose testimony is represented by a party to be essential is unable or unwilling to testify at the hearing, either in person or through electronic or other means, either party may request that the arbitrator order the witness to appear in person for examination before the arbitrator at a time and location where the witness is willing and able to appear voluntarily or can legally be compelled to do so. Any such order may be conditioned upon payment by the requesting party of all reasonable costs associated with such examination.

**(c)** If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

## R-37. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## R-38. Interim Measures

**(a)** The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

**(c)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## R-39. Emergency Measures of Protection

**(a)** Unless the parties agree otherwise, the provisions of this Rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013. This Rule shall not apply to cases administered pursuant to the Expedited Procedures.

**(b)** A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or email or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

**(c)** Within one business day of receipt of notice from the AAA initiating the request referenced in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall expeditiously disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

**(d)** The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule R-7, including the authority to rule on her or his own jurisdiction, and shall resolve any disputes over the applicability of this Rule R-39.

**(e)** If, after consideration, the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief under applicable law, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

**(f)** Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the non-emergency ("merits") arbitrator is appointed; thereafter such a request shall be addressed to the merits arbitrator. The emergency arbitrator shall have no further power to act after the merits arbitrator is appointed unless the emergency arbitrator is named as the merits arbitrator or as a member of the panel.

**(g)** Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

**(h)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this Rule, and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

**(i)** The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the merits arbitrator to determine finally the apportionment of such costs. The emergency arbitrator may take into consideration whether the request for emergency relief was made in good faith.

## R-40. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-36, or if briefs are to be filed, the hearing shall be declared closed as of the date the arbitrator is satisfied that the record is complete, and such date shall occur no later than seven calendar days from the date of receipt of the last such submissions or hearing transcript.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.

## R-41. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties, the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award (or 14 calendar days if the case is governed by the Expedited Procedures).

## R-42. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

## R-43. Extensions of Time

The parties may modify by mutual agreement any period of time established by these Rules or the parties' arbitration agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## R-44. Serving of Notice and Communications

**(a)** The service methods set forth in Rule R-4(b)(iii) may also be used for the delivery of any filing, notice or communication throughout the course of the arbitration proceeding.

**(b)** The AAA, the arbitrator, and the parties may also use alternative methods of communication or other platforms as directed by the AAA or as agreed by the parties or directed by the arbitrator to exchange any communication or other notice required by these Rules during the course of the arbitration.

**(c)** Unless otherwise instructed by the AAA or by the arbitrator, any party submitting any document or written communication to another party, the AAA or the arbitrator, shall simultaneously provide that material to all other participants, including the AAA.

**(d)** Failure to provide the other party with copies of communications provided to the AAA or the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained therein.

**(e)** The AAA may direct that any oral or written communications sent by a party or their representative shall be sent in a particular manner. The failure of a party or their representative to comply with any such direction may result in the AAA's refusal to consider the issue raised in the communication

**(f)** The AAA may initiate administrative communications with the parties or their representatives either jointly or individually.

**(g)** Any method of service on or notice to a party must be made in such a manner to provide that party with reasonable opportunity to be heard with regard to the dispute.

## R-45. Confidentiality

**(a)** Unless otherwise required by applicable law, court order, or the parties' agreement, the AAA and the arbitrator shall keep confidential all matters relating to the arbitration or the award.

**(b)** Upon the agreement of the parties or the request of any party, the arbitrator may make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting trade secrets and confidential information.

## R-46. Majority Decision

**(a)** When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement or section (b) of this Rule, a majority of the arbitrators must make all decisions.

**(b)** Where there is a panel of three arbitrators, absent an objection of a party or another member of the panel, the chairperson of the panel is authorized to

resolve any disputes related to the exchange of information or procedural matters without the need to consult the full panel.

**(c)** Absent an objection of a party or another member of the panel, the chairperson may sign any order on behalf of the panel.

## R-47. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

## R-48. Form of Award

**(a)** Any award shall be in writing and signed by a majority of the arbitrators. Signatures may be executed in electronic or digital form. The award shall be executed in the form and manner required by law.

**(b)** The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

## R-49. Scope of Award

**(a)** The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

**(c)** In the final award or any order disposing of all of the case, the arbitrator shall assess the fees, expenses, and compensation provided in Rules R-55, R-56, and R-57. The arbitrator may also assess such fees, expenses, and compensation in any order or award disposing of part of the case. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

**(d)** The award of the arbitrator may include:

**i)** interest at such rate and from such date as the arbitrator may deem appropriate; and

**ii)** an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement.

## R-50. Award Upon Settlement – Consent Award

**(a)** If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses as set forth in Rule R-49(c).

**(b)** The consent award shall not be released to the parties until all administrative fees and all arbitrator compensation have been paid in full.

## R-51. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

## R-52. Modification of Award

**(a)** Within 20 calendar days after the transmittal of any award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, interpret the award or correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to re-determine the merits of any claim already decided. The other parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

**(b)** If the arbitrator has established a different schedule for such requests, responses, and disposition, the arbitrator's schedule will supersede the deadlines set forth in this Rule.

## R-53. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party to the arbitration, furnish to the party, at its expense, copies or certified copies of any papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

## R-54. Applications to Court and Exclusion of Liability

**(a)** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in any judicial proceedings relating to the arbitration or any other services provided by the AAA.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that the AAA shall not be liable to any party in any action for damages, or injunctive or other relief, for any act or omission in connection with any arbitration administered in whole or in part by the AAA or conducted under these Rules. Parties shall also be deemed to have consented that the arbitrator shall not be liable to any party in any action for damages, or injunctive or other relief, for an act or omission in connection with any arbitration administered in whole or in part by the AAA.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## R-55. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the Demand is filed will apply throughout the pendency of the case. The administrative fees shall be paid initially by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

## R-56. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

## R-57. Neutral Arbitrator's Compensation

**(a)** Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation at the time their AAA resume is presented to the parties for consideration pursuant to Rule R-13, unless otherwise determined by the AAA. Such compensation will be consistent with the provisions of the arbitrator's executed *Notice of Compensation Arrangements*.

**(b)** If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

**(c)** Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

## R-58. Deposits

**(a)** The AAA will require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's compensation and expenses, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case. A party's failure to make the requested deposits by the date established by the AAA may result in the AAA's or the arbitrator's taking any appropriate steps as set forth in Rule R-59.

**(b)** Other than in cases where the arbitrator serves for a flat fee, deposit amounts requested will be based on estimates provided by the arbitrator. The arbitrator will determine the estimated amount of deposits using the information provided by the parties with respect to the complexity of each case.

**(c)** The AAA shall request from the arbitrator an itemization or explanation for the arbitrator's request for deposits.

**(d)** The AAA will allocate the deposits requested among the parties and will establish due dates for the collection of those deposits.

## R-59. Remedies for Nonpayment

If arbitrator compensation or expenses or the AAA's administrative fees have not been paid in full, the AAA may so inform the parties so that one of them may advance the required payment.

**(a)** Upon receipt of information from the AAA that payment for administrative fees or deposits for arbitrator compensation or expense have not been paid in full, to the extent the law allows, a party may request that the arbitrator take specific measures relating to a party's non-payment. Such measures may include, but are not limited to:

  **i)** limiting a party's ability to assert or pursue its claim, and

  **ii)** prohibiting a non-paying party from filing any motion.

**(b)** In no event, however, shall a party be precluded from defending a claim or counterclaim.

**(c)** The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any ruling regarding the same.

**(d)** In the event that the arbitrator grants any request for relief which limits any party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments to submit such evidence as the arbitrator may require for the making of an award.

**(e)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(f)** If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full payments requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.

## R-60. Sanctions

**(a)** The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

**(b)** The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

# Preliminary Hearing Procedures

## P-1. General

**(a)** In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

**(b)** Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

## P-2. Checklist

**(a)** The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

    **i)** the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to Rule R-10;

    **ii)** whether all necessary or appropriate parties are included in the arbitration;

    **iii)** whether a party will seek a more detailed statement of claims, counterclaims or defenses;

    **iv)** whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

    **v)** which

        **a)** arbitration rules;

        **b)** procedural law; and

        **c)** substantive law govern the arbitration;

    **vi)** issues related to cybersecurity, privacy and data protection to provide for an appropriate level of security and compliance in connection with the proceeding;

    **vii)** whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation,

        **a)** any preconditions that must be satisfied before proceeding with the arbitration;

        **b)** whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

**c)** consolidation of the claims or counterclaims with another arbitration; or

**d)** bifurcation of the proceeding.

**viii)** whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

**ix)** whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

**x)** how costs of any searches for requested information or documents that would result in substantial costs should be borne;

**xi)** whether any measures are required to protect confidential information;

**xii)** Whether the parties shall disclose:

**a)** whether any non-party (such as a third-party funder or an insurer) has undertaken to pay or to contribute to the cost of a party's participation in the arbitration, and if so, to identify the person or entity concerned and to describe the nature of the undertaking; and

**b)** whether any non-party (such as a funder, insurer, parent company, or ultimate beneficial owner) has an economic interest in the outcome of the arbitration, and if so, to identify the person or entity concerned and to describe the nature of the interest;

**xiii)** whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

**xiv)** whether, according to a schedule set by the arbitrator, the parties will:

**a)** identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

**b)** exchange and pre-mark documents that each party intends to submit; and

**c)** exchange pre-hearing submissions, including exhibits;

**xv)** the date, time and place of the arbitration hearing;

**a)** whether, at the arbitration hearing,

**b)** testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means;

**xvi)** there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

**xvii)** whether any procedure needs to be established for the issuance of subpoenas;

**xviii)** the identification of any ongoing, related litigation or arbitration;

**xix)** whether post-hearing submissions will be filed;

**xx)**   the form of the arbitration award; and

**xxi)**   any other matter the arbitrator considers appropriate or a party wishes to raise.

**(b)** The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

# Expedited Procedures

## E-1. Limitation on Extensions

**(a)** Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the Demand for Arbitration or counterclaim as provided in Rule R-5.

**(b)** Any other extension requests may be granted only after consideration of Procedure E-7.

## E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, any time prior to the appointment of the arbitrator. However, after the arbitrator is appointed, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $100,000, the case will be administered under the regular Commercial Arbitration Rules unless all parties and the arbitrator agree that the case may continue to be administered under the Expedited Procedures.

## E-3. Serving of Notice

In addition to notice provided by Rule R-44, the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

## E-4. Appointment and Qualifications of Arbitrator

**(a)** The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

**(b)** The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

**(c)** The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Rule R-19.

The parties shall notify the AAA within seven calendar days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

## E-5. Discovery, Motions, and Conduct of Proceedings

**(a)** At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

**(b)** No other discovery shall be permitted except as allowed by the arbitrator for good cause shown. If the arbitrator allows additional discovery, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.

**(c)** There shall be no motions except as allowed by the arbitrator for good cause shown.

## E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission

Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. Where cases are resolved by submission of documents, the following procedures may be utilized at the agreement of the parties or the discretion of the arbitrator:

**(a)** Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator may convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

**(b)** The arbitrator has the discretion to remove the case from the documents-only process if the arbitrator determines that an in-person hearing is necessary.

**(c)** If the parties agree to in-person hearings after a previous agreement to proceed under this Procedure, the arbitrator shall conduct such hearings. If a party seeks to have in-person hearings after agreeing to this Procedure, but there is not agreement among the parties to proceed with in-person hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

**(d)** The arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence.

**(e)** Unless the parties have agreed to a form of award other than that set forth in Rule R-48, when the parties have agreed to resolve their dispute by this Procedure, the

arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(f)** If the parties agree to a form of award other than that described in Rule R-48, the arbitrator shall have 30 calendar days from the date the hearing is declared closed in which to render the award.

**(g)** The award is subject to all other provisions of the regular Commercial Arbitration Rules which pertain to awards.

## E-7. Date, Time, Place, and Method of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, place, and method of the hearing, to be scheduled to take place no more than 60 days after the preliminary hearing or as otherwise mutually agreed to between the parties and the arbitrator. The AAA will notify the parties in advance of the hearing date.

## E-8. The Hearing

**(a)** Absent good cause shown, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two business days after the hearing.

**(b)** For good cause shown, the arbitrator may schedule one additional day of hearings to be completed within seven business days after the initial day of hearing or as soon as practicable as determined by the arbitrator. In cases where the hearing is scheduled to exceed one day, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.

**(c)** Generally, there will be no stenographic record. Any party desiring a transcribed record of the hearing may arrange for one pursuant to the provisions of Rule R-29.

## E-9. Time of Award

Unless otherwise agreed by the parties and arbitrator, the award shall be rendered not later than 14 calendar days from the date of the closing of the hearing or, if oral hearings have been waived, from the due date established for the receipt of the parties' final statements and proofs.

## E-10. Arbitrator's Compensation

**(a)** Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

**(b)** For cases that are removed from the Expedited Procedures after the preliminary hearing is held, the arbitrator shall be compensated pursuant to Rule R-57.

# Procedures for Large, Complex Commercial Disputes

## L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA may, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call or video conference. The conference will take place as soon as practicable after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

**(a)** to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

**(b)** to discuss the views of the parties about the technical and other qualifications of the arbitrators;

**(c)** to obtain conflicts statements from the parties; and

**(d)** to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

## L-2. Arbitrators

**(a)** Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties do not agree upon the number of arbitrators and a claim or counterclaim involves at least $3,000,000 then three arbitrators shall hear and determine the case; otherwise one arbitrator shall hear and determine the case.

**(b)** In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, regardless of the amount of the claim and counterclaim.

**(c)** The AAA shall appoint the arbitrator as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator shall not have served as the mediator in the mediation phase of the instant proceeding.

## L-3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with Procedures P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator determines otherwise.

**(d)** The parties and the arbitrator shall address issues pertaining to the pre-hearing exchange and production of information in accordance with Rule R-23 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within a scheduling order.

**(e)** The arbitrator, or any single member of the panel, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within their discretion, including, without limitation, the issuance of orders set forth in Rules R-23 and R-24 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

## Administrative Fee Schedules (Standard and Flexible Fees)

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT ***www.adr.org/feeschedule***.

# Commercial Mediation Procedures

## M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

## M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via AAA WebFile at **www.adr.org.**

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

(i) A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

(ii) The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

(iii) A brief statement of the nature of the dispute and the relief requested.

(iv) Any specific qualifications the mediator should possess.

## M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-4. Appointment of the Mediator

If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

(i)   Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

(ii)  If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

(iii) If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

## M-7. Duties and Responsibilities of the Mediator

(i) The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

(ii) The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

(iii) The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

(iv) The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

(v) In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

(vi) The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

(i) Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

(ii) Admissions made by a party or other participant in the course of the mediation proceedings;

(iii) Proposals made or views expressed by the mediator; or

(iv) The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-12. Termination of Mediation

The mediation shall be terminated:

(i) By the execution of a settlement agreement by the parties; or

(ii) By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

(iii) By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

(iv) When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

## M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-17. Cost of the Mediation

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT *www.adr.org/feeschedule*.

© 2023 American Arbitration Association, Inc. All rights reserved. These rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

## Regional Vice Presidents

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
Matthew Conger, Esq.
Vice President
Phone: 202.223.8590
Email: CongerM@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
Svetlana Gitman, Esq.
Vice President
Phone: 773.820.7801
Email: GitmanS@adr.org

**States: Alaska, California, Oregon, Washington**
Aaron Gothelf, Esq.
Vice President
Phone: 415.671.4053
Email: GothelfA@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida, Puerto Rico**
Angela Romero Valedon
Vice President
Phone: 305.358.7777
Email: RomeroA@adr.org

**States: Arizona, Colorado, Kansas, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Rhode Island, Vermont**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, PR, SC, TN, VA**

Sandra Marshall
Vice President
Phone: 559.490.1906
Email: MarshallS@adr.org
**Administers cases in: AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

Rod Toben
Vice President
Phone: 972.774.6923
Email: TobenR@adr.org
**Administers Cases in: AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**



AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | websitemail@adr.org | adr.org